STATE OF IOWA, appellee, v. JOSEPH FRANK RAYMOND, appellant.

No. 51801.

(Reported in 142 N.W.2d 444)

MAY 3, 1966.

Norman G. Jesse of Jesse & LeTourneau, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Don R. Bennett, Assistant Attorney General, Ray A. Fenton, of Des Moines, County Attorney, and James D. McKeon, of Des Moines, Assistant County Attorney, for appellee.

BECKER, J.—Defendant Joseph Frank Raymond was indicted, tried and convicted of the crime of breaking and entering. From this conviction he appeals.

During the early hours of January 26, 1965, police officers Edward Dunham and Eugene Battani, on duty in downtown Des Moines, saw defendant Joseph Raymond in a pool hall. Officer Dunham observed Raymond's clothing to be clean and in fair condition, not torn or disarranged.

Approximately two hours later at about 1:45 a.m. the officers observed an open window at the Wallace Radio Shop. Investigation disclosed the Howell Auto Parts Company, immediately adjacent, had a broken skylight, with jagged pieces of glass, a black substance and water on the floor immediately

under the skylight. This skylight was reinforced glass covered with tar. A coke machine had been pried open and a coin box disturbed.

There was fresh snow that night. The officers noted footprints leading away from the open window. The right shoe print had a full horseshoe heel plate, whereas the left shoe had no such plate. Officers Weatherington and Kail joined the other two officers at the auto parts shop. Officers Weatherington and Kail later left the scene to locate Raymond. They found him in his car in an alley near the Chamberlain Hotel. At that time his shoes were soaked through, his coat appeared dirtier, had various tears; his trousers had a dark substance on them at the front and back which appeared to be grease or tar. His hands had the same substance on them. Officer Weatherington arrested defendant prior to the time that officers Dunham and Battani arrived. Defendant was informed that he was arrested as a suspect in the Howell Auto Parts break in, taken to the jail and booked at the station under "investigation to detectives."

At the jail it was discovered that defendant had an old cut on his arm which had become infected. He was taken to Broadlawns Hospital for treatment at which time he apparently stated he had been with a party named Stuart in the 1200 or 1300 block of Woodland Avenue in Des Moines. He was taken on a search for that house and upon failing to find it he was taken back to the scene of the break in. There defendant was asked for his shoe. He at first refused to give his shoes to the officers but did so when told that the shoes would be impounded. The shoes were matched with the prints in the snow. Officers Dunham and Battani testified that the defendant's right shoe was equipped with a horseshoe heel plate and that the shoes exactly matched the footprints in the snow.

Defendant denies that he was told what he was being charged with at the time of his arrest in the alley behind the Chamberlain Hotel other than to be told that he was being arrested for investigation. He states that he went to jail and took his clothes off, put them back on and at that time the police noticed his arm was injured. They took him to the Broadlawns Hospital; thence to the Howell Auto Parts Building. He stated

that the police told him to take his shoes off and he complied and they took his shoes. They took his clothing at the police station later telling him they wanted it as evidence in the Howell Auto Parts job.

Returned to the station, defendant's jacket, trousers and shoes were impounded. These items together with known samples of glass, tar and paint obtained from the broken skylight in the Howell Auto Parts were sent for FBI Laboratory analysis in Washington. Trial evidence was produced from the special agent of the laboratory that materials removed from the clothing, characteristically speaking, matched the known materials from the skylight.

Prior to trial defendant moved to suppress evidence the items seized from him and objected to any testimony in relation thereto, in that all such evidence and testimony resulted from an unreasonable search and seizure. A voir dire hearing was held absent the jury. The trial court overruled the motion to suppress, finding that the officers had probable cause to make the arrest in the alley near the hotel and thus the subsequent search and seizure of the appellant's clothing was not unreasonable nor in violation of his constitutional rights.

 I. Defendant's first assigned errors are that instruction 10 told the jury that defendant's failure to testify could be considered as "an inference of guilt", also the county attorney in final argument commented on defendant's failure to take the stand. Griffin v. California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed.2d 106; State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518; State v. Beshears, 258 Iowa 389, 138 N.W.2d 886; State v. Osborne, 258 Iowa 390, 139 N.W.2d 177; and State v. Barton, 258 Iowa 924, 140 N.W.2d 886. While Griffin was not released until a few days after trial here, it is still controlling. State v. Barton, supra. This case must be reversed and remanded for a new trial.

II. Defendant's assigned errors numbers three through six all relate to the court's refusal to honor defendant's Motion to Suppress Evidence and the subsequent use of the clothing and shoes of defendant as evidence; matching of the material found

on the clothing and the shoes with that known substance from the skylight.

Article I, section 8, of the Constitution of the State of Iowa is comparable to Amendment 4 to the Constitution of the United States:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

 It is clear that no search warrant had here been obtained. Not all searches or seizures undertaken without a warrant are unreasonable. A search and seizure predicated on voluntary consent or one conducted as an incident of a lawful arrest are two of the known exceptions to the rule that a search must rest upon a search warrant. Stoner v. California, 376 U. S. 483, 84 S. Ct. 889, 11 L. Ed.2d 856; Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed.2d 777; State v. Post, 255 Iowa 573, 123 N.W.2d 11; State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518. We believe that it is unnecessary to examine the question of whether the appellant consented to the search and seizure. This matter can and should be determined upon the question of whether the search and seizure was reasonable as incident to a lawful arrest.

Section 755.4, Code, 1962, provides that a peace officer may make an arrest without a warrant where a public offense has been committed and the officer has reasonable grounds for believing that the person to be arrested has committed it.

 "The constitutional validity of the search in this case, then, must depend upon the constitutional validity of the petitioner's arrest. Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the fact and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. Brinegar v.

United States, 338 U. S. 160, 175–176, 93 L. ed. 1879, 1890, 69 S. Ct. 1302; Henry v. United States, 361 U. S. 98, 102, 4 L. ed. 2d 134, 138, 80 S. Ct. 168. 'The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating ........ often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officer's whim or caprice.' Brinegar v. United States, 338 U. S. at 176, 93 L. ed. at 1891." Beck v. Ohio, 379 U. S. 89, 91, 85 S. Ct. 223, 225, 226, 13 L. Ed.2d 142 (October 15, 1964).

Defendant stresses the fact the officers who actually made the arrest had not seen defendant or his condition earlier in the evening. This overlooks the fact that the four officers were properly working as a team and had been together at the scene of the crime. He also stresses the fact that the officers were looking for defendant before they knew of the stains on the hands and clothing and the tears in the jacket. This would not make the arrest illegal. Evidence circumstantially tending to connect defendant with the crime was visually apparent without need for further search or seizure immediately upon finding defendant.

The officers knew that there had been a breaking and entering at the auto parts company. Defendant had torn clothing, substances on his clothing and hands, apparently similar to the tar and glass found at the scene of the break in. He was in the near vicinity of the break in both shortly before and after discovery of the condition of the building. Before the break in his clothes were untorn and unsoiled. His hands did not contain the substance referred to. Under such circumstances the trial court held that the officers had lawfully made an arrest without warrant. We agree.

III. Defendant makes the further point that he was not informed of the cause of his arrest at the time of his arrest in violation of section 755.7, Code, 1962. Officer Joseph Dunham testified:

"Q. Officer, did you also inform him that he was a suspect in the Howell break in? A. We did."

1346

Re-cross-examination

"Q. Isn't it a fact that you informed him at the Howell Parts Building on the way back from the scene of the Howell break in? A. No. He was advised of this at the scene.

"Q. At the scene of the Howell break in? A. No, at the scene of his arrest, which would be the Chamberlain Hotel on the alley."

There was direct evidence of compliance with section 755.7.

While it is true that defendant was booked for "Investigation to Detectives" and the statute of Iowa contains no such charge, this fact alone, where, as here, there is testimony that defendant was actually informed of the cause of his arrest, and where, as here, there is no claim of unreasonable delay in taking defendant before a magistrate, will not make the arrest and subsequent detention so illegal as to render all evidence procured thereafter inadmissible.

IV. Defendant concedes that if the arrest in the instant case was lawful then the police had the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of the crime or for implements used to commit the crime. But he urges that the seizure here was not contemporaneous with the arrest either in time or space and that, further, the articles seized were neither weapons, fruits of the crime or implements used to commit the crime. He quotes Preston v. United States, supra, to sharply limit the right to search and seize: "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." and quoting Stoner v. California, supra, "But a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest."

In Preston a car was searched after defendants were booked at the police station and after the car had been towed to the garage. In Stoner a search of a hotel room was made by the police while they were looking for the defendant *before* he was arrested and without a search warrant. In Stoner the argument used in the state courts that the search could reasonably be

claimed to be a part of a lawful arrest was abandoned in the Federal Courts and not in issue before the Supreme Court of the United States. A strict extension of the rules quoted would require the police to seize clothing at the scene of the arrest. We do not believe such an absurdity is required.

■ V. No literal or mechanical approach should be adopted in determining what may constitute a search and seizure. Lanza v. State of New York, 370 U. S. 139, 82 S. Ct. 1218, 8 L. Ed.2d 384. Standards of reasonableness are not susceptible to Procrustean Application, Ker v. State of California, 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed.2d 726.

■ ■ VI. The words search and seizure are not synonymous. Here there was a seizure but no search was necessary. "It is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation." United States v. Williams, 314 F.2d 795, 798 (C. A. 6); Lundberg v. Buchkoe, 338 F.2d 62 (C. A. 6); Robinson v. United States, 109 App. D. C. 22, 283 F.2d 508; Nelson v. Hancock, 239 F. Supp. 857 (D. N. H.). While the seizure, as well as the search, must not be unreasonable, it would appear that the lack of need for a search, because the evidence is visually apparent in a public place, would affect the reasonableness of delay where the items seized are clothing from the defendant's body.

In United States v. Margeson, 246 F. Supp. 219 (1965), the defendant, accused of bank robbery, was arrested after positive identification by one of the persons in the Federal Loan and Building Association that was robbed. A shoe mark including a heel mark was found on the counter at the scene of the crime. The officer at the time of the arrest took the shoes from defendant, examined the heels and returned them, stating that they were important evidence in the case and that he was seizing them. The defendant was allowed to wear the shoes for about an hour until other shoes could be obtained for him. The delay did not make the seizure unreasonable.

In a rape case an arrest without warrant was made, the underwear of the defendant seized, examined for seminal stains and subsequently admitted in evidence. The court held that the arrest was on probable cause and legal, the seizure of the under-

wear, in view of the nature of the offense charged, was justified as would be the seizure of a bloodstained shirt tending to connect a person with an offense in which blood had flowed. The fact that the evidence was not taken from the person of the defendant until arrival at the police station, presumably for reasons of modesty, does not make the search and seizure at a place remote from the arrest. The right to seize arose at the time of the arrest. It was effected by seizure of defendant's clothes. Subsequent separation of the defendant and the seized garments does not make the seizure and retention of the latter illegal. People v. Shaw, 47 Cal. Rptr. 96.

Here the defendant was first asked to remove his clothes, then asked to put them back on. It was at this point that the infected arm was discovered. The trip to the hospital was not an unreasonable delay. Nor was the trip to find the nonexistent address of the man with whom defendant spent the evening. Finally, particularly where the shoe print was in fresh fallen snow (a notoriously ephemeral substance), the trip to the scene of the crime did not constitute an unreasonable delay. The seizure was not unreasonable either as to time or space as incident to the arrest.

It should be noted that had the story of defendant checked out as to the address and the card playing acquaintance, or had the shoes and footprints been mismatched, the evidence thus collected would have worked to defendant's advantage.

VII. Defendant also raises the "mere evidence" rule. No Iowa case that considers this rule as such is cited. Efforts to suppress the seizure of shoes and/or clothing as "mere evidence" were made in United States v. Margeson, supra, and People v. Shaw, supra, both referred to in Division VI. In Margeson and other federal cases, rule 41(b), Federal Rules of Criminal Procedure, is applicable. Perhaps that situation as much as any has caused some courts to justify seizure of shoes and clothing on the grounds that they are instruments by which the crime is committed. Margeson involved shoes seized on arrest without warrant. The court observed:

"Defendant's argument that the shoes were not a proper subject for seizure is based upon the rule approved by the Su-

preme Court in Harris v. United States, 331 U. S. 145, 154, 67 S. Ct. 1098, 1103, 91 L. Ed. 1399 (1947), where the Court recognized

> 'the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime.' [Citations omitted.]

"See Abel v. United States, 362 U. S. 217, 234–241, 80 S. Ct. 683, 4 L. Ed.2d 668 (1960). However, the rule precluding seizure of 'merely evidentiary materials' has ever [sic] been applied to objects found in a search of the person of the defendant incident to his lawful arrest. It is still the law, as declared by the Supreme Court in Weeks v. United States, 232 U. S. 383, 392, 34 S. Ct. 341, 344, 58 L. Ed. 652 (1914) (dictum), that the Government has the right to 'search the person of the accused when legally arrested to discover and seize the fruits or *evidences* of crime.' (Emphasis added.) [Cases cited] Furthermore, the Government's position here is that the shoes involved were used by the defendant in committing the bank robbery for which he was arrested. It seems clear, therefore, that they are not 'merely evidentiary materials,' but rather that they are 'the instrumentalities and means by which * * * [the] crime * * * [was] committed * * *' United States v. Guido, 251 F.2d 1, 3–4 (7th Cir.), cert. denied, 356 U. S. 950, 78 S. Ct. 915, 2 L. Ed.2d 843 (1958)." United States v. Margeson, 246 F. Supp. 219, 223 (1965).

United States v. Guido, supra, involved admission of shoes obtained by search of defendant's apartment at time of arrest. Defendant argues that shoes were not the "means of committing a criminal offense" within the meaning of Federal Rules of Criminal Procedure, 41(b) which provides that a warrant may issue to search for and seize any property (2) "Designed or in-

tended for use or which is or has been used as the means of committing a criminal offense." The court's analysis includes the following rationale at page 3 of 251 F.2d:

"It is not logical to place in different categories a mask and a hat which might have been worn and pulled down upon the face of the robber to make identification more difficult. It is likewise difficult to place in different categories a pair of gloves worn on the hands and a pair of shoes worn on the feet. Surely, the latter would facilitate a robber's get-away and would not attract as much public attention as a robber fleeing barefooted from the scene of the hold-up."

Like reasoning would seem to be even stronger here where not only the shoes but the pants and jacket of defendant are involved. But such efforts to stay within the rule have correctly been termed frivolous by the New Jersey Court in State v. Bisaccia, 45 N. J. 504, 213 A.2d 185. The court carefully analyzed the basis for the "mere evidence" rule as it applied to the states under the United States Constitution. On the basis of history and logic, it refused to apply that rule in its court. The court said in part at pages 507, 517, 519 of 45 N. J., 186, 192, 193 of 213 A.2d:

"The concept that mere evidence may not be the subject of a search warrant is attributed to Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746 (1886). That case involved a forfeiture proceeding under the customs laws. Pursuant to a statute defendant was there ordered to produce certain invoices upon pain of an adverse finding of fact if he failed to obey. The Supreme Court unanimously held the statute violated the provision of the Fifth Amendment that no person 'shall be compelled in any criminal case to be a witness against himself.' Two members of the Court believed there was no search or seizure and hence that the Fourth Amendment was inapplicable, but the majority of the Court, speaking through Mr. Justice Bradley, found the Fourth Amendment also stood in the way. Their reliance upon the Fourth provoked unending controversy. * * *.

"It is true, as held in United States v. Guido, 251 F.2d 1 (7 Cir. 1958), cert. denied 356 U. S. 950, 78 S. Ct. 915, 2 L. Ed. 2d 843 (1958), and by the trial court in the case before us, that

the shoes could be deemed an instrumentality of the crime, for a robber could hardly pursue his plans in the nude. Indeed the more ordinary the garb the more it supports a criminal venture. But we are reluctant to resort to anything so frivolous as the property-right-to-possession theme. The law should not forfeit everything an offender wears to arrive at the sensible result that an article of clothing may be used according to its true probative force. Moreover the property theme would be hard pressed if a man were believed to have committed a murder in his home or his office or his automobile and the State sought to search for bloodstains on the floor or upholstery. Nor should we have to declare a corpse the fruit of crime to enable the police to search for it. It is far more palatable to say directly that title and possession are beyond the point; that the Fourth Amendment, striking a balance between the right of the individual suspected of crime and the duty of the State to protect its citizens, permits a search for the avowed purpose of finding evidence with which to convict, so long at least as there is not involved the evil of the general warrant, the unrestricted invasion of the privacy of a man's papers with which Boyd and Entick were concerned. * * *

"The Fourth Amendment contemplates that things may be seized for their inculpatory value alone and that a search to that end is valid, so long as it is not otherwise unreasonable and the Fourth Amendment's formal requirements, if applicable, are met."

This rule, that things may be seized for their inculpatory value alone, is not unreasonable. Evidence otherwise properly seized will not be excluded on the sole ground that it is not the fruit of the crime or the means of committing the offense.

For the reasons set forth herein the evidentiary rulings are approved but this case is reversed and remanded for new trial. —Reversed and remanded.

All JUSTICES concur.