**STATE of Iowa, Appellee,**

v.

**David Randall KRAMER, Appellant.**

No. 57528.

Supreme Court of Iowa.

July 31, 1975.

Dennis J. Naughton, Dubuque, for appellant.

Richard C. Turner, Atty. Gen., David M. Dryer and Jim P. Robbins, Asst. Attys. Gen., Robert J. Curnan, County Atty., and Thomas J. Schrup, Asst. County Atty., for appellee.

Heard by MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

The jury found this defendant guilty of breaking and entering, a violation of § 708.-8, The Code. He was fined $25 and sentenced to the county jail for a term of eleven months. Upon his appeal from this judgment, we affirm.

On Monday morning, November 12, 1973, an employee of David Solomon Company, Dubuque, Iowa, discovered a sheet of tin had been pried loose at the back of the building used in the company's scrap metal business. A latch from a vehicle-entry door had been broken off. A large quantity of scrap metal, largely copper wire, was missing.

Police investigation revealed unusual rear tire tracks at the vehicle door, one tire being a snow tire and the other a regular tread. A small piece of blue cloth was found on the man-sized opening through the tin wall.

Later the same morning investigating officer Lindauer saw an old pickup double-parked in front of Blum Company, another scrap dealer. It had rear tire treads similar to the tracks observed at the Solomon premises. Readily observable was the load of scrap metal the open pickup carried, similar to that stolen from Solomons.

Defendant approached the pickup wearing a blue hooded jacket with a tear in the sleeve. Responding to Lindauer's questions, he admitted the jacket and the pickup were his. Defendant was then arrested and placed in jail. Within a three hour period and before he was taken before a magistrate, his jacket was taken from him. When he was released from jail defendant was told he could have his truck back, absent the two rear tires and the scrap metal removed by the police.

At trial, over defendant's objections, a written report from the Iowa criminalistics laboratory was introduced into evidence. The report carried a laboratory technician's opinion that the blue piece of cloth recovered at the Solomon break-in "was at one time a portion" of defendant's jacket.

Defendant does not challenge the sufficiency of the evidence to support his conviction. He raises eight issues for reversal, discussed below in separate divisions.

I. *Did trial court err by refusing to submit defendant's requested "character" instruction?*

Defendant's former landlord testified defendant's character was "good" in the community. On the basis of this testimony defendant proposed an instruction explaining the legal effect of character evidence and requested trial court to so instruct the jury. Trial court refused on the grounds it was unclear whether the testimony related to character or reputation, and in any event the testimony did not relate to the particular character traits involved in the crime charged. See State v. Hobbs, 172 N.W.2d 268, 271 (Iowa 1969). No exception was taken to this ruling although opportunity was afforded to do so.

 In our view trial court's ruling was correct. In any event, defendant waived review of this issue by his failure to except to the court's failure to submit the instruction. See State v. Feddersen, 230 N.W.2d 510 (Iowa 1975).

II. *Did trial court abuse its discretion in overruling defendant's motion to suppress testimony of two witnesses when notice of their testimony was served on defendant's attorney rather than defendant?*

Trial commenced April 29, 1974, as scheduled. On April 24, 1974, notice of the testimony of two additional witnesses was delivered to the sheriff's office for service. Records from that office indicate an attempt to serve defendant on August 24. The next morning, August 25, deputy sheriff Neuhaus talked to defendant's mother.

She said defendant was not at home and she had no idea where he had gone. He then served defendant's attorney.

Defendant's pre-trial motion to suppress the testimony of these two witnesses alleged the State failed to comply with § 780.10, The Code, there being no showing of a diligent effort to serve defendant. A hearing developed the above information relative to service. The State does not dispute the propriety of raising this issue by a motion to suppress.

The notice given defendant's attorney was timely. Section 4.1(22), The Code; State v. Bradley, 254 Iowa 211, 217, 116 N.W.2d 439, 442–443 (1962); see State v. King, 225 N.W.2d 337, 342 (Iowa 1975). The sole issue is due diligence.

In State v. Bruno, 204 N.W.2d 879, 885–886 (Iowa 1973) we set out the substance of § 780.10 and stated 1) the purpose of the section is to inform defendant of the witnesses against him and the substance of their testimony, 2) service on record counsel is authorized if the officer made a diligent but futile search for defendant, 3) the State need not show defendant was outside the county, 4) trial court has wide discretion in determining whether due diligence was employed, and 5) this court will not interfere unless an abuse of discretion appears.

 The record before us shows two attempts to serve defendant. During the second attempt (on the last day permitted under § 780.10) the deputy sheriff, despite informing defendant's mother of his purpose, was unable to obtain any information as to defendant's whereabouts or his expected time of return. Trial court did not abuse its wide discretion in holding the deputy was then justified in serving defense counsel under the § 780.10 alternative.

III. *Did trial court err by overruling defendant's motion to suppress the evidentiary use of defendant's jacket?*

Defendant's pre-trial motion to suppress stated as grounds: 1) State's failure to give

him a receipt for the jacket, 2) violation of § 751.37, The Code, and 3) violation of his constitutional right to be free from unreasonable searches and seizures.

■ However desirable such a practice might be as a matter of fairness and record-keeping, there is no statutory authority requiring issuance of a receipt for items taken in a *warrantless* seizure. Section 751.13, The Code (officer taking property *under a warrant,* must *on demand,* give a receipt). Nor is there any evidence defendant ever demanded a receipt. While State v. Wenks, 200 Iowa 669, 202 N.W. 753 (1925) (holding failure to give receipt does not furnish grounds for suppression) was decided at a time when Amendment 4, United States Constitution, was not applicable to the states, we have not found, nor has defendant cited, any authority to support a theory such a ministerial act rises to constitutional significance.

Defendant next asserts a warrantless seizure of his jacket could only be effected under § 751.37, The Code:

"When a person charged with an offense is supposed by the magistrate before whom he is brought to have upon his person a dangerous weapon, or anything which may be used as evidence of the commission of the offense, the magistrate may direct him to be searched in his presence, and the weapon or evidence to be retained, subject to his order, or the order of the court in which the defendant may be tried."

■ Defendant appears to claim § 751.37 prohibits searches of, and seizures from, an arrested individual's person until he is taken before a magistrate. Such an interpretation would allow prisoners to retain destructible evidence or dangerous weapons until brought before a magistrate. This would violate our rule of statutory construction which requires us, if possible, to avoid conclusions which lead to absurd results. See Steinbeck v. Iowa Dist. Ct. in and for Linn County, 224 N.W.2d 469, 476 (Iowa 1974).

■ We view § 751.37 as providing an additional exception to the rule that ordinarily a warrant is a prerequisite to a valid search and seizure. Cf. Wessling v. Bennett, 290 F.Supp. 511, 518 (N.D.Iowa 1968), aff'd, 410 F.2d 205 (8 Cir. 1969), cert. denied, 396 U.S. 945, 90 S.Ct. 384, 24 L.Ed.2d 248 (1969).

■ Finally, we hold the warrantless seizure of defendant's jacket within two or three hours following his arrest and while he continued in custody did not violate his constitutional rights. This situation falls within the "search incident to an arrest" exception to the general requirement of a search warrant. United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); State v. Wessling, 260 Iowa 1244, 1254–1255, 150 N.W.2d 301, 307 (1967); State v. Raymond, 258 Iowa 1339, 1346–1347, 142 N.W.2d 444, 448–449 (1966).

IV. *Did trial court err in overruling defendant's motion to suppress the evidentiary use of tires from his pickup?*

We have already noted defendant double-parked his pickup in a public street the morning after the break-in. The investigating officer saw on the open bed of the truck scrap metal similar to that stolen at Solomons. He observed the two rear tires would make the distinctive tracks found at the site of the theft.

Following defendant's arrest the pickup was taken to the police station where the two tires were removed and held for evidence.

Defendant first argues his motion to suppress evidentiary use of the tires should have been sustained because he was not given a receipt upon their seizure. We have adversely disposed of an identical issue in division III.

But defendant also contends his fourth amendment rights were violated by a "search" of his pickup and seizure of his tires. He cites authorities indicating this situation does not squarely fall within the warrantless search exceptions of search in-

cident to an arrest, the *Carroll* doctrine, or "plain view."

Nonetheless, we are convinced the "search" in this instance, and the tire seizure, escape constitutional interdiction through the rationale in Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). There the defendant parked his car in a public lot and went to a police station where he was subsequently arrested. The police, without search warrant, impounded his auto. The next day they examined its tires and took paint scrapings from the body.

The United States Supreme Court in *Cardwell* noted the right to privacy is the touchstone in any consideration of a fourth amendment violation, recognized the less stringent requirements relating to vehicles, and observed the "search" in issue related only to the exterior of the car. It concluded the "search" was reasonable. The court further reasoned that when examination of the exterior of the vehicle upon probable cause was reasonable, use of the evidence thereby obtained was not subject to constitutional barrier because the examination followed a prior impoundment of the automobile.

In attempting to claim items openly exposed on the exterior of his double-parked pickup carry a fourth amendment protection, defendant displays an overly-sensitized and wholly unwarranted expectation of privacy. What we said in State v. Davis, 228 N.W.2d 67, 72 (Iowa 1975) is directly applicable:

> "However, the place where the seized property is located may be so exposed as to immediately negate any reasonable expectation of privacy, thus, the 'open field' situation is presented. As such evidence is not safeguarded by the constitution it may be seized without further justification. No intrusion in the constitutional sense is involved."

See State v. Raymond, 258 Iowa 1339, 1347, 142 N.W.2d 444, 448 (1966), quoting from United States v. Williams, 314 F.2d 795, 798 (6 Cir. 1963) (" 'It is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation' "); see also Air Pollution Variance Board v. Western Alfalfa Corporation, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); State v. Neely, 261 Iowa 1107, 1112, 156 N.W.2d 840, 843 (1968); cf. United States v. Evans, 447 F.2d 129, 131–132 (8 Cir. 1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 727, 30 L.Ed.2d 735 (1972).

■ Although there was no search conducted by the officer here, this fact does not immunize his actions from constitutional challenge. The fourth amendment protects against unreasonable seizures as well as unreasonable searches, thus we must decide whether under the facts of this case seizure of defendant's pickup was reasonable. This requires a determination whether the seizing officer had probable cause to believe defendant's pickup had been used in the commission of an offense. United States v. Evans, supra at 131.

■ The facts on which probable cause could be based are these: officer Lindauer saw the unusual tire tracks at the Solomon Company and the matching tires on defendant's pickup; he knew that a large quantity of copper wire was stolen and he saw such material openly visible on defendant's pickup; and defendant's pickup was parked outside another scrap metal company the same morning the theft was discovered. We hold that, under these circumstances, probable cause to seize the pickup existed, and defendant's motion to suppress as it related to the pickup tires was properly overruled.

V. *Did trial court err by admitting into evidence the criminalistics laboratory report?*

■ Defendant asserts admission of the report over his objections was error because it violated his sixth amendment right to confront his accusers and because an insufficient foundation was established. He is

confronted at the outset with the strong presumption of constitutionality of regularly enacted statutes. State v. Kueny, 215 N.W.2d 215, 216 (Iowa 1974).

The report was admitted into evidence pursuant to § 749A.2, The Code (set out in full in State v. One Certain Conveyance, 1971 Honda 350, Etc., 211 N.W.2d 297 [Iowa 1973] at 300) which defendant attacks as unconstitutional.

Defendant concedes he had ample notice the report would be offered. He elected not to request the technician be produced as a witness because the statute "in requiring him to give such notice, violated the constitutional right to confront the witness."

The issue of the constitutionality of § 749A.2 compellingly invokes a comparison with § 232.31, The Code. See State v. One Certain Conveyance, 1971 Honda 350, Etc., supra at 301. We have construed § 232.31 to mean the juvenile, if seasonably advised that reports are to be offered, must establish he has exhausted process to secure presence of the desired witnesses in order to preserve a claim admission of such reports constitutes a denial of his constitutional right to confrontation. In re Meyer, 204 N.W.2d 625, 627 (Iowa 1973); In re Delaney, 185 N.W.2d 726, 732–733 (Iowa 1971).

Defendant unsuccessfully seeks to distinguish the juvenile cases by arguing different standards apply there. See Delaney, supra at 729–731. Cf. Thomas v. State, Board of Parole, 220 N.W.2d 874, 878 (Iowa 1974). His further reliance on Davis v. Alaska, 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974) is misplaced. The defendant in Davis was completely precluded from cross-examining on the specific issue of the witness' juvenile record. And while in Davis Alaska's interest in preserving the anonymity of a juvenile offender was out-weighed by defendant's right of confrontation, here we scale the possibility of a breakdown in processing criminal investigations (while idle criminalistics laboratory experts cool their heels in courtrooms around the state) against whatever alleged inconvenience might be occasioned defense counsel in making a simple request that the expert be produced as a witness.

If the main and essential purpose of confrontation is to secure for the accused the *opportunity of cross-examination,* see *Davis,* supra at 353, 5 Wigmore on Evidence § 1400, p. 200 (Chadbourn rev. 1974), there is no constitutional infirmity in § 749A.2. Here defendant chose not to exercise his right to cross-examine.

The "lack of foundation" contention is not really argued by defendant. The foundation issues raised below were directed at the technician's qualifications and expertise which are statutorily presumed. If the obscure reference to this contention in defendant's brief is meant to allege the report was inadmissible because it failed to show sufficient facts upon which the opinion was based (see Hedges v. Conder, 166 N.W.2d 844, 857 [Iowa 1969]), that issue was not specifically raised by the in-trial foundation objection and will not be considered now.

We have considered defendant's other arguments related to the issue treated in this division and find them to be without merit. Under the issues posed here we find § 749A.2, The Code, passes constitutional muster.

VI. *Did trial court err by instructing the jury a criminalistics laboratory employee is presumed qualified and any report by such employee has the same force and effect as if testified to in person?*

Trial court submitted the following instruction based upon § 749A.2, The Code:

"Under the law of Iowa, it is presumed that any employee of the State Criminalistics Laboratory possesses the required expertise to accomplish any analysis, comparison or identification done by such employee in the course of employment in the laboratory and that any report of such employee shall have the same force and effect as if the employee had testified in person.

This presumption is not conclusive but should be considered and given the weight to which you believe it entitled in the light of all of the other evidence."

Defendant objected on the grounds the statutory presumption was for the purpose of admission only and not for the purpose of jury instruction; the instruction on presumption placed undue emphasis on the technician, the report, and the weight it should be given; and it deprived defendant of due process and the right to confront the witness.

The arguments made in defendant's brief appear largely unrelated to the exceptions taken to the instruction. If the instruction had any frailties, they are not pinpointed by defendant's arguments.

■ We do not view the instruction as telling the jury "as a matter of law that the report was credible." A fair reading of the instruction shows the jury was only told there was a rebuttable presumption the technician *could* properly perform any required analysis; not that he or she *did,* or that the conclusion reached was rebuttably presumed correct.

■ Defendant finally argues "While the instruction in this case did not create the presumption of truth, it created the presumption of an expertise which should have been determined by the jury." Of course expertise is a matter of admissibility, Hedges v. Conder, supra at 857, and admissibility is ordinarily the sole province of the judge, State v. Berch, 222 N.W.2d 741, 745 (Iowa 1974). Here admissibility as it turned on expertise was resolved by the statutory presumption. Assuming, without holding, defendant's criticism of the instruction was well taken, defendant was given the benefit of allowing the jury to reject the statutory presumption and consequently determine the admissibility of the report. He has no basis for complaint on this score.

We find no reversible error with respect to the issue set out in this division.

VII. *Did trial court err by overruling defendant's amended motion for new trial based upon newly discovered evidence?*

Principles applicable to motions for new trial based upon newly discovered evidence are set out in State v. Farley, 226 N.W.2d 1, 3 (Iowa 1975) and State v. Compiano, 261 Iowa 509, 516–519, 154 N.W.2d 845, 849–851 (1967). See § 787.3(8), The Code.

■ Trial court is vested with wide discretion in passing on such motions and its decision will be reversed only if that discretion is abused. Such motions are not favored and should be closely scrutinized and granted sparingly. Defendant must show 1) the evidence was discovered after trial and before judgment, 2) it could not have been discovered earlier in the exercise of due diligence, 3) it is material to the issue, not merely cumulative or impeaching, and 4) it would probably change the result if a new trial is granted.

There was ultimately submitted with the amended motion for new trial the written statement of defendant's brother John stating he borrowed defendant's truck the night of the theft, took the Solomon scrap metal, and on the next morning persuaded defendant, for a promised payment, to pick it up from where it had been deposited and sell it. The statement indicates defendant was suspicious even before his arrest: "At first Dave was a little apprehensive, but I insisted the copper was not stolen, and that it was OK to sell as it was."

We observe in passing John's brotherly solicitude, demonstrated by his post-verdict confession, is not unique in our cases. See State v. Farley, 226 N.W.2d 1, 3 (Iowa 1975). But it is obvious, taking the confession at face value, defendant from the moment of his arrest had to know John was a probable source of information about the Solomon break-in. Nowhere in the motions, affidavits, nor in John's statement, is there any assertion defendant ever questioned John concerning the theft. Nor is there any showing the alleged evidence

could not have been discovered before conclusion of defendant's trial.

 The court could have found defendant failed to show due diligence. We find no abuse of trial court's discretion in overruling the motion.

VIII. *On the record as a whole, did defendant receive a fair trial?*

Defendant also contends we should reverse because trial court erroneously overruled his new-trial motion grounded on the general allegation he did not receive a fair trial. See § 787.3(8), The Code.

 In ruling on such motions trial court has a broad but not unlimited discretion to determine if substantial justice has been done. See Lappe v. Blocker, 220 N.W.2d 570, 572 (Iowa 1974). We hold that discretion was not abused in this instance.

Affirmed.