# IN THE COURT OF APPEALS OF IOWA

No. 20-0110
Filed June 30, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**EDWARD MILLER JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.

        Edward Miller Jr. appeals his convictions for attempted murder, willful injury causing bodily injury, assault while participating in a felony, going armed with intent, felon in possession of a firearm, and conspiracy to obstruct prosecution. **AFFIRMED.**

        Britt Gagne of Gagne Law Office, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Edward Miller Jr. appeals his convictions for attempted murder, willful injury causing bodily injury, assault while participating in a felony, going armed with intent, felon in possession of a firearm, and conspiracy to obstruct prosecution. Miller claims substantial evidence does not support the jury's guilty verdicts. He also argues the trial court erred in denying his motion for a new trial and erred in evidentiary rulings, including improperly allowing prior bad acts evidence. We find the verdicts supported by substantial evidence. We also determine the district court did not err in the evidentiary rulings or in denying Miller's motion for a new trial. Accordingly, we affirm.

## I.      Background and Proceedings.

A rational jury could find the following facts based on the evidence admitted at trial. On November 30, 2018, Ryan Stout drove his car to see his ex-wife, who had a valid no-contact order against him. Stout parked near an apartment complex some distance from his ex-wife's house. While he was near the apartment complex, a truck driven by Miller approached, and Miller warned Stout to move away from the apartment complex because Stout did not belong in the area. Stout did not know Miller.

Approximately fifteen minutes after their initial interaction, Stout again encountered Miller outside the apartment complex. During this second encounter, Miller was wielding a sawed-off shotgun. After exchanging words, Miller raised the gun in the direction of Stout and fired at him, shooting Stout in the abdomen and his face. Stout fled to his ex-wife's house. Stout sustained injuries to his ribcage,

bicep, and face. One bullet fragment went between Stout's orbital bone and eyeball.

Police arrived on the scene of the shooting. A live Winchester .12-gauge shotgun shell, commonly referred to as "birdshot," was located outside the apartment complex near the backdoor. Stout provided officers with a description of Miller. Officers sought to interview the residents of the five-unit apartment complex. Officers were able to speak with the residents of four of the units; however, none of the residents matched Miller's description. Miller's brother leased the remaining unaccounted-for apartment. Although officers repeatedly knocked on the door of the fifth unit, no one answered.

On December 3, police detectives interviewed Stout. During the interview, Stout was asked to review a photo line-up. A photo of Miller was not included. Stout reviewed the photos and identified a potential suspect; however, he was uncertain the identified individual was the perpetrator. Days later, the police produced another photo line-up, which now included a photo of Miller. Stout identified Miller as his assailant.

Investigators interviewed Miller concerning his whereabouts on the night in question. Miller stated at the time of the shooting, he was living with his ex-wife, K.T. He reported he was not at the apartment complex in question on the night of the shooting and initially claimed to have been out with a girlfriend. When investigators informed Miller they planned to speak to the female Miller used as an alibi, Miller changed his story and said that he was actually with his other girlfriends. When asked to provide contact information for the people he was

allegedly with, Miller could not provide last names or physical addresses for verification. When investigators then offered a random name as someone Miller may have been with on the night of the shooting, Miller responded that he could have been with that person.

In late December, while incarcerated, Miller instructed K.T. to remove his property from his brother's apartment. Miller's possessions were later recovered from K.T.'s residence after investigating officers obtained a search warrant for her home. Included in the property seized were Miller's camera equipment and shotgun ammunition.

While serving time for violating his no-contact order in late December, Stout encountered Miller in the Polk County jail. The encounter resulted in Miller pointing his hands at Stout to feign firing a gun at him. Stout reported the incident to jail security and again identified Miller as the man who previously shot him.

On February 8, 2019, the State filed a trial information charging Miller with attempted murder, willful injury causing bodily injury, assault while participating in a felony, going armed with intent, felon in possession of a firearm, and conspiracy to obstruct prosecution. Miller demanded speedy trial. Trial commenced on May 6, 2019. Kenneth Hardy, an acquaintance of Miller, testified. At trial, Hardy testified that Miller had been living at Miller's brother's apartment when the shooting took place. Hardy testified that on the night of the shooting, he observed police investigating the apartment complex. The next day, Hardy asked Miller why the police were at his apartment the night before. Hardy testified Miller said it was because he shot somebody who refused to leave the apartment complex. Miller

described the man as "lucky" because the gun was loaded with birdshot and not slugs. Hardy later relayed these statements to law enforcement. Hardy testified he believed Miller's description of the events was plausible because, in the days leading up to the shooting, Miller had grown increasingly paranoid, resulting in Miller putting up cameras and purchasing a shotgun. Hardy testified that when he was in Miller's apartment a few days before the shooting, he observed a shotgun as well as red shotgun shells underneath Miller's couch and in his bedroom.

The jury found Miller guilty of all charges. Miller's felony convictions were enhanced by the habitual offender status pursuant to Iowa Code section 902.8 (2018). On June 24, Miller filed a motion for a new trial, citing newly discovered evidence and arguing the jury verdict was contrary to the weight of the evidence. Following an evidentiary hearing held on December 23, the district court denied the motion. On January 2, 2020, the district court imposed an indeterminate forty-year period of incarceration with a mandatory minimum term of twenty-and-a-half years. Miller now appeals.

## II.    Sufficiency of the Evidence

Miller challenges the sufficiency of the evidence concerning the charges of attempted murder, going armed with intent, and conspiracy to obstruct prosecution.[1] Miller also conflates his sufficiency of the evidence arguments with

---

[1] To the extent Miller argues sufficiency of the evidence as to the other three convictions, we find such arguments waived by lack of citation to the record. "When a party, in an appellate brief, fails to state, argue, or cite to authority in support of an issue, the issue may be deemed waived." *State v. Adney*, 639 N.W.2d 246, 250 (Iowa Ct. App. 2001); *see also* Iowa R. App. P. 6.903(2)(g)(3) (stating the argument section shall include "[a]n argument containing the appellant's contentions and the reasons for them with citations to the authorities

a "weight of the evidence" standard. We address his sufficiency of the evidence arguments immediately below and address the weight of the evidence challenge in conjunction with Miller's motion for a new trial argument.

### A.     Standard of Review

"Challenges to the sufficiency of the evidence are reviewed for errors at law." *State v. Hansen*, 750 N.W.2d 111, 112 (Iowa 2008). The jury's verdict is binding upon the reviewing court unless there is an absence of substantial evidence to sustain it. *See* Iowa R. App. P. 6.904(3)(a); *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). "Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005). We review the evidence in the light most favorable to the State, and all reasonable inferences are drawn to uphold the verdict. *State v. Leckington*, 713 N.W.2d 208, 212–13 (Iowa 2006). Direct and circumstantial evidence are equally probative. Iowa R. App. P. 6.904(3)(p).

---

relied on and references to the pertinent parts of the record . . . [and f]ailure to cite authority in support of an issue may be deemed waiver of that issue"); *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997); *Metro. Jacobson Dev. Venture v. Bd. of Rev.*, 476 N.W.2d 726, 729 (Iowa Ct. App. 1991). As noted above, random mention of an issue, without elaboration or supportive authority, is not sufficient to raise an issue for review. *Schreiber v. State*, 666 N.W.2d 127, 128 (Iowa 2003). We do not consider conclusory statements not supported by legal argument. *See, e.g., Baker v. City of Iowa City*, 750 N.W.2d 93, 103 (Iowa 2008) (holding that a party's "conclusory contention" was waived where the party failed to support it with an argument and legal authorities); *State v. Piper*, 663 N.W.2d 894, 913–14 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545, 551 (Iowa 2010) (concluding the defendant waived consideration of the merits of his claims on appeal, which were presented as one-sentence conclusions without analysis); *McCleeary v. Wirtz*, 222 N.W.2d 409, 417 (Iowa 1974) (holding that a "subject will not be considered" where a "random discussion" is not supported by a legal argument and citation to authority).

### B.    Attempted Murder

First, Miller asserts the State failed to provide sufficient evidence to support his attempted murder conviction.  For the jury to convict Miller of attempted murder, the State was required to prove beyond a reasonable doubt that (1) Miller shot Stout; (2) he expected that his actions would set in motion a force or chain of events that would cause or result in Stout's death; and (3) his specific intention was to cause Stout's death.

The State proved the identity of the shooter through Stout's eyewitness testimony, Hardy's testimony, and other circumstantial evidence.  Miller challenges the reliability of Stout's eyewitness identification and argues that without it, there is insufficient evidence to prove he was the shooter.  He points to Stout's initial incorrect photo lineup identification and offers other factors that may affect eyewitness identification, including distance and visibility, the presence of a dangerous weapon, intoxication levels of the witness, and cross-racial identification.

However, "[g]enerally, direct eyewitness testimony establishing the elements of the crime are sufficient to generate a jury question."  *State v. Keys*, No. 15-1991, 2017 WL 1735617, at *9 (Iowa Ct. App. May 3, 2017).  Although we recognize that eyewitness testimony is not without fault, our supreme court has stated, "[t]he fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness."  *State v.*

*Doolin*, 942 N.W.2d 500, 509 (Iowa 2020) (citing *Perry v. New Hampshire*, 565 U.S. 228, 245 (2012)).

"[T]he jury, not the judge, traditionally determines the reliability of evidence." *Id.* "[I]t suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, . . . vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id.* at 509–510.

The potential shortcomings of Stout's eyewitness testimony were presented to the trier of fact. The jury was aware of Stout's identification in the initial photo lineup, which did not include Miller. They heard Stout describe the distance and condition under which he observed Miller. Additional circumstantial evidence identifying Miller as the shooter was also presented. Miller and Stout encountered each other while incarcerated and Stout reported to jail security that Miller stared at him and made a shooting motion with his hands. Additionally, Hardy's testimony that Miller lived at the apartment building, had recently become increasingly paranoid and purchased a shotgun, and admitted to shooting Stout offers support for the jury verdict. We find sufficient evidence establishing Miller as the shooter.

Miller challenges the remaining intent-related elements of his attempted murder conviction. He argues the probability of the shooter's actions causing death was so low, such cannot sufficiently prove the shooter acted with the necessary intent. Miller argues because Stout was shot with birdshot from a distance, the shooter could not have expected the shooter's actions to result in

Stout's death and, therefore, the shooter lacked the specific intent to cause Stout's death. However, intent is not dependent on the probability of a certain outcome; it is the action and its expected consequences from which intent is inferred. *See State v. Young*, 686 N.W.2d 182, 185 (Iowa 2004) (finding that factual possibility is unnecessary to find an act was in furtherance of the required specific intent necessary to support a conviction for attempted murder).

"The general rule is that one who arms himself with the express purpose of shooting another cannot ordinarily claim the elements of first degree murder are lacking." *State v. Smith*, 240 N.W.2d 693, 695 (Iowa 1976). Miller pointed a loaded shotgun at Stout, pulled the trigger, and Stout sustained injuries. That Stout did not sustain more serious injuries as a result of the shooting does not negate the action itself and the intent derived therefrom. Further, the jury heard Miller's statement that Miller believed the gun was loaded with slugs rather than birdshot. The jury also heard testimony that birdshot fired at a certain distance could still be lethal. We find the record contains sufficient evidence for the jury to convict Miller of attempted murder.

### C. Going Armed with Intent

Next, Miller argues that the State failed to sufficiently prove the identity and "going" elements of the conviction for going armed with intent. As the charged offense arises from the same underlying factual scenario, our analysis regarding the identity element as discussed above is applicable here. The "going" element requires the State to prove that while armed with a firearm, Miller moved from one

place to another. Miller argues the State failed to meet its burden because no testimony was offered to show he went somewhere to obtain the shotgun.

The evidence presented to the jury established that no weapon was observed during Miller and Stout's initial confrontation. When Stout returned and the two men met again, Miller was armed with a shotgun. From the evidence presented, a jury could reasonably infer Miller left the initial scene, obtained the shotgun, and returned—carrying the firearm from one place to another. *See State v. Harris*, 891 N.W.2d 182, 187 (Iowa 2017) (finding sufficient circumstantial evidence for the jury to infer defendant carried a knife from inside the bar where an initial verbal confrontation occurred to the street where the stabbing later took place). When viewing the evidence in the light most favorable to the State, we find sufficient evidence to support Miller's conviction of going armed with intent.

### D. Conspiracy to Obstruct Prosecution.

Finally, Miller challenges his conviction for conspiracy to obstruct prosecution. Miller attacks the sufficiency of the evidence to support the first two elements the jury was required to find: (1) that he agreed with K.T. that one of them would commit the offense of obstruction of prosecution and (2) he entered into the agreement with the intent to promote or facilitate the commission of the offense.

While incarcerated, Miller called K.T. and requested she remove his property from his brother's apartment. The phone calls in the jail were monitored. Included in the items K.T. removed and which were subsequently seized at her apartment were Miller's camera equipment and shotgun ammunition. At trial, the State argued the removed property could be admissible, and the circumstances

surrounding the call indicate Miller intended for K.T. to remove the property in order to conceal it from the prosecution. K.T. testified that Miller had asked her to remove the property for safekeeping but that Miller never asked her to remove a gun or ammunition, only to remove a washer and dryer, his camera equipment, and a vehicle.

A reasonable jury could infer from the surrounding circumstances that Miller's intent was to remove potentially incriminating evidence from his brother's apartment. Miller specifically asked K.T. to remove his camera and camera equipment. The cameras and equipment could potentially contain evidence relevant to the night of the shooting, and Miller's request for K.T. to remove it from the apartment would prevent investigators from finding it. Intent is usually proven "by circumstantial evidence and inferences reasonably drawn from the conduct of the defendant and all the attendant circumstances in light of human behavior and experience." *State v. Casaday*, 491 N.W.2d 782, 788 (Iowa 1992). We find the record contains sufficient evidence to support Miller's conviction for conspiracy to obstruct prosecution.

### III.    Motion for New Trial

Following trial, Miller filed a motion for a new trial arguing newly discovered evidence and that the jury's verdict was contrary to the weight of the evidence. When reviewing a district court's ruling on a motion for a new trial based on newly discovered evidence, we review for an abuse of discretion. *State v. Smith*, 573 N.W.2d 14, 17 (Iowa 1997). An abuse of discretion occurs when the "district court exercised its discretion on grounds or for reasons clearly untenable or to an extent

clearly unreasonable." *State v. Reeves*, 670 N.W.2d 199, 207 (Iowa 2003). When a defendant claims the district court should have granted a motion for new trial on a claim the verdict was contrary to the weight of the evidence, review is for an abuse of discretion. *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006).

As noted by the trial court, in order to receive a new trial for newly discovered evidence, the defendant has the burden of showing that (1) the evidence was discovered after the verdict, (2) could not have been discovered earlier in the exercise of due diligence, (3) is material to the issues in the case and not merely cumulative, and (4) probably would have changed the result of the trial. *See Harrington v. State*, 659 N.W.2d 509, 516 (Iowa 2003); *see also* Iowa R. Crim. P. 2.24(2)(b)(8).

The district court held an evidentiary hearing to consider the new evidence. At the hearing, Miller called Marshall Wilkerson as a witness. Wilkerson testified that in late November or early December 2018, his friend, Luke Swann,[2] asked him to hide a sawed-off shotgun and Swann stated that he shot Stout. He further testified he did not report such to the police because he "was not even sure it was true or not." However, on redirect, Wilkerson, for the first time, stated that he was an eyewitness to the shooting.

The district court found it questionable as to whether Miller met the discoverability element. However, the court determined that even given the benefit of the doubt on the discoverability element, Miller had not proven that the newly

---

[2] Swann died on March 4, 2019, which was prior to Miller's trial.

discovered evidence was likely to change the outcome of the trial. The court noted that the State had presented "a strong case" with "evidence [that] was rationally connected and made logical sense," whereas the testimony offered by Wilkerson lacked credibility and would not change the outcome of a new trial. The court noted that Wilkerson never reported Swann's involvement to law enforcement and stated that he actually witnessed the shooting for the first time on redirect at the hearing. Additionally, while Miller asserted that he did not know Wilkerson and they did not discuss the shooting, the two men were housed on the same unit while incarcerated. Finally, the court reasoned that if a new trial were granted, previously excluded incriminating evidence of Miller's attempts to fabricate an alibi through another inmate while incarcerated would likely be introduced, undermining any of Wilkerson's testimony and further incriminating Miller.

Motions for a new trial based on newly discovered evidence are "not favored and should be closely scrutinized and granted sparingly." *State v. Kramer*, 231 N.W.2d 874, 881 (Iowa 1975). "The standard for whether the evidence probably would have changed the result of the trial is a high one because of the interest in bringing finality to criminal litigation." *More v. State*, 880 N.W.2d 487, 499 (Iowa 2016). The record supports the district court's determination. There are issues of reliability surrounding Wilkerson's explanation of the shooting. Evidence of Miller's previous attempts to fabricate an alibi further discredit Wilkerson's testimony and, if introduced at a new trial would incriminate Miller. "The trial court is generally in a better position than we to determine whether evidence, newly discovered, would probably lead to a different verdict upon retrial, and we have often said we will not

interfere with its ruling unless it is reasonably clear that such discretion was abused." *State v. Compiano*, 154 N.W.2d 845, 849 (1967). We affirm the district court's denial of Miller's motion for a new trial, finding no abuse of discretion by the trial court.

Finally, Iowa Rule of Criminal Procedure 2.24(2)(b)(6) allows the district court to grant a new trial when the verdict is contrary to law of evidence. "Contrary to the evidence" means contrary to the weight of the evidence. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). "The 'weight of the evidence' refers to 'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'" *Id.* at 658 (quoting *Tibbs v. Florida*, 457 U.S. 31, 37–38 (1982)). "This is a more stringent standard than the sufficiency-of-the-evidence standard." *Nguyen v. State*, 707 N.W.2d 317, 327 (Iowa 2005). "[The court] may weigh the evidence and consider the credibility of witnesses. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted." *Ellis*, 578 N.W.2d at 658–59. The district court's discretion should be exercised with caution and invoked "only in exceptional cases in which the evidence preponderates heavily against the verdict." *Id.* at 659. "[A]ppellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Reeves*, 670 N.W.2d at 203.

Following an evidentiary hearing, the trial court denied the motion, finding:

> The weight of the evidence supports defendant's convictions. The victim identified defendant as the shooter. While

he picked out a different person in the first photo lineup, he had stated he was not sure and did not definitively identify him. He immediately recognized defendant from the second lineup. Further, he encountered defendant at the jail and recognized him from that event. Mr. Stout testified that defendant even made a shooting motion when they saw each other. Mr. Stout reported the incident to the jail and again identified defendant as the shooter from a jail video. Mr. Hardy testified that defendant admitted to and described the shooting. That description is consistent to the actual shooting. Mr. Hardy testified that he had seen a shotgun at defendant's apartment previously. Law enforcement located a shotgun shell outside the apartment building. Defendant resided in that building, so he was tied to the location. There was no history between defendant and Mr. Stout, but defendant was dealing drugs and the jury heard testimony that he was becoming increasingly paranoid. Mr. Stout did not live at the building and was walking through the parking lot late at night, which may have fed into defendant's paranoia. Defendant's testimony was not clear and lacked credibility. The jury's decision was reasonably based on credible evidence presented at trial.

We find the district court did not abuse its discretion by denying Miller's motion for a new trial based on the weight-of-the-evidence standard as the verdict is not contrary to the weight of the evidence.

## IV. Evidentiary Objections

Evidentiary rulings are generally reviewed for abuse of discretion. *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018). An abuse of discretion occurs when "discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Long*, 814 N.W.2d 572, 576 (Iowa 2012). The standard of review for hearsay, however, is for errors at law. *State v. Huser*, 894 N.W.2d 472, 495 (Iowa 2017). When hearsay is improperly admitted, the district court's error is presumed to be prejudicial unless the State demonstrates the error was harmless. *Id.*

Miller begins by pointing to the sustained hearsay objection following an exchange between defense counsel and witness Hardy during cross-examination. The exchange involved a question of whether Hardy remembers ever being told by Miller if the cameras were put up in part to keep an eye on his brother. Without deciding whether the district court erred in its ruling, the excluded testimony of Hardy did not prevent Miller from offering his explanation for installing security cameras or otherwise limit his defense. During his testimony at trial, Miller's counsel specifically asked him his reasoning for installing security cameras. The jury heard Miller's explanation, including that he did so in part to protect his brother. We find the sustained objection was harmless to Miller.

Additionally, Miller challenges the overruled objection raised by defense counsel following the prosecution's inquiry into the observations an officer made while watching Stout study the photo lineup. Defense counsel objected to the question and potential answer on the grounds of speculation. Here, the question presented to the officer regarded the officer's observation of Stout while he was looking over the photo lineup.

An answer to the question posed requires nothing more than the officer's observations that Stout studied the lineup carefully and intently and appeared uncertain when identifying the potential defendant. These are the officer's observations and they are personal to him. Additionally, this was not new evidence for the jury as the testimony that Stout was uncertain and improperly identified the defendant had already been provided to the jury, and therefore any alleged error is harmless. We affirm the district court's rulings on the objections.

## V.        Prior Bad Acts Evidence

Finally, Miller challenges the district court's admittance of certain prior bad acts evidence.  Prior to trial, Miller filed a motion in limine concerning proposed testimony of Hardy suggesting Miller had purchased a shotgun because he sold drugs and was concerned about being robbed.  Miller asserted the evidence was inadmissible character evidence, irrelevant, and its probative value was substantially outweighed by the risk of unfair prejudice.  The State responded that the evidence was being introduced to prove motive and offered to explain why Miller would shoot Stout, whom he did not know.  The court preliminarily accepted the evidence could be used to prove motive but reserved ruling until proper foundation had been laid at trial.  The State made an offer of proof prior to Hardy testifying, and the court ruled the testimony admissible.

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion.  *State v. Rodriguez*, 636 N.W.2d 234, 239 (Iowa 2001).  The party challenging the evidentiary ruling must prove the trial court abused this discretion.  *State v. Plaster*, 424 N.W.2d 226, 232 (Iowa 1988).  Abuse occurs when the trial court exercises its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable."  *State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008).  When an appellate court weighs the probative value of the evidence against its prejudicial effect, it gives significant leeway to the trial judge's determination.  *State v. Newell*, 710 N.W.2d 6, 20–21 (Iowa 2006).

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity

therewith." Iowa R. Evid. 5.404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Castaneda*, 621 N.W.2d 435, 439–40 (Iowa 2001). In order for the district court to properly admit prior bad acts evidence, it must first find that the evidence is relevant to some fact in issue other than the defendant's criminal disposition, that there is "clear proof" the defendant committed the act, and that the evidence's probative value is not substantially outweighed by the risk of unfair prejudice. *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004).

We have found evidence is "prima facie admissible" if it is offered for a legitimate purpose other than to prove propensity. *Castaneda*, 621 N.W.2d at 439–40. Miller did not know Stout, and thus the State needed to establish a motive for Miller shooting Stout. Hardy's testimony was used to explain Miller had grown increasingly paranoid of being robbed and Miller did not like that Stout kept "creeping back" after warning him to leave the area. This testimony could establish a motive for the shooting and serves a legitimate purpose. *See State v. Nelson*, 791 N.W.2d 414, 425–26 (Iowa 2010) (finding evidence of drug dealing was relevant to motive because a drug dealer would be more inclined to shoot a person seeking to buy drugs if they believed the person was an undercover police officer).

Regarding clear proof, Miller argues Hardy lacks credibility and, therefore, his testimony could not be used as evidence Miller sold drugs.

> In assessing whether there is clear proof of prior misconduct, it is not required that the prior act be established beyond a reasonable doubt, nor is corroboration necessary. There simply needs to be sufficient

proof to prevent the jury from engaging in speculation or drawing inferences based on mere suspicion.

*Newell*, 710 N.W.2d at 23 (quotations and citations omitted). Hardy's trial testimony concerning Miller's admissions, which were subject to cross-examination, is sufficient to satisfy the clear proof requirement.

Finally, we turn to whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Evidence is unfairly prejudicial it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action." *Castaneda*, 621 N.W.2d at 440. The probative value of evidence is substantially outweighed by its prejudicial effect when it could lead a jury to base its decision on unrelated or un-established factors in the case. *Plaster*, 424 N.W.2d at 231.

In *State v. Larsen*, 512 N.W.2d 803, 808 (Iowa Ct. App. 1993), we concluded that prior bad acts evidence that was no more sensational or disturbing than the crime charged did not meet this standard. Miller was charged with attempted murder and other violent offenses—conduct more alarming than dealing drugs. Additionally, evidence of Miller's drug dealing was not overreaching but briefly mentioned to establish motive. We find it unlikely the jury convicted Miller based on Hardy's testimony that Miller sold drugs. "Because the weighing of probative value against probable prejudice is not an exact science, we give a great deal of leeway to the trial judge who must make this judgment call." *Newell*, 710 N.W.2d at 20–21. We affirm the court's ruling.

**VI.     Conclusion**

We find the jury's verdict supported by substantial evidence. We also determine the district court did not err in its evidentiary rulings or by denying Miller's motion for a new trial.  Accordingly, we affirm Miller's convictions.

**AFFIRMED.**