STATE of Iowa, Appellee,

v.

Floyd Martin PECK, Appellant.

No. 57633.

Supreme Court of Iowa.

Feb. 18, 1976.

Hoadley Law Office, Fairfield, for appellant.

Richard C. Turner, Atty. Gen., William D. Scherle, Asst. Atty. Gen., Des Moines, Edwin F. Kelly, Jr., County Atty., Fairfield, for appellee.

Submitted to MOORE, C. J., and MASON, LeGRAND, REES and HARRIS, JJ.

REES, Justice.

Defendant was charged by county attorney's information with possession of a schedule I controlled substance, specifically, marijuana, in violation of § 204.401(3), The Code, 1973. Following his plea of not guilty, defendant was tried to a jury. From judgment of conviction entered on the jury verdict, he appeals. We affirm.

The record indicates defendant Peck lived with other tenants in a house at 121 South Main, Fairfield, Iowa, from November 1973 through March 1974. Thereafter, he ceased paying rent and moved many of his belongings to his parents' farm at Rural Route 3, Fairfield. He apparently maintained his primary residence at his parents' home during the months of April and May 1974 and ceased using 121 South Main as a mailing address. According to his mother, defendant came and went as he pleased during his stay at the family home, spending the night there an average of three times per week.

During the same period, defendant also made some use of the house on Main Street. Testimony at trial tends to indicate he left a number of his belongings, including clothing, books, a stereo and a borrowed rifle in the upstairs room he previously occupied full-time. He stored his bicycle under the staircase there. He frequently stopped by the house to shower or pick up some of the things he had left in the room. There was testimony he stayed overnight in the house on several occasions.

In the early morning hours of May 30, 1974, law enforcement authorities proceeded to the house at 121 South Main. Minutes attached to the county attorney's in-

formation detail certain facts which explain, at least in part, why the authorities believed defendant and one Doug Bartlett might be found to possess marijuana. Although the testimony contained in the minutes was suppressed by trial court, it was substantially corroborated by defendant in a pre-sentence investigation report.

It appears that around 10:45 p. m. on May 29, State Trooper Robert Gorsuch stopped for a taillight violation a van driven by defendant and owned by Bartlett, who was also in the vehicle. According to Gorsuch, the occupants appeared unusually nervous, so he "back-checked" the street and found lying on the pavement a plastic bag containing two small bags of plant material he believed to be marijuana. Following a period of surveillance, Gorsuch and Officer Russell Schafer of the Fairfield Police Department dusted the bag with red stain. At about 1:00 a. m. two persons on bicycles went to the place where the bag was lying. Defendant admits he was one of the cyclists and that he picked up the bag and rode off. He further claims he threw the bag away as he rode along. Officers Gorsuch and Schafer followed the two cyclists to 121 South Main. When defendant then proceeded from the residence, the officers stopped him about one-half block away. Defendant's hands were stained red, presumably by the police dye on the bag.

Officers requested that defendant consent to a search of "his" room at the residence. Defendant refused, so officers spoke with one David Lyons, whom the State identifies as the "primary renter" of the dwelling. Lyons purported to give authorities permission to search the house. Accompanied by Trooper Gorsuch and a small number of other officers, he proceeded upstairs to the room formerly occupied full-time by defendant and entered it by opening a door, announcing at that time that it was "Floyd's room." Gorsuch apparently followed Lyons to about one step inside the doorway. The Trooper beamed his flashlight briefly around the room, according to his testimony at trial, for the purposes of affording protection to other police and making sure no one else was in the room. He then asked Lyons to come out of the room, and called upon two members of the "Fairfield Posse" to secure the then closed room until a search warrant could be procured.

While the warrant was being sought, authorities spoke further with defendant, who continued in his refusal to consent to a search of the room, adding that he had no authority to consent to such a search, since he no longer rented the room.

A search warrant issued and officials returned to the room. The subsequent warranted search turned up a brass water pipe, a small tobacco can full of marijuana seeds, a plastic bag containing a quantity of what was later confirmed by testing to be marijuana, two packs of cigarette papers, a "metal fitting," two "brass plugs or fittings," a brass bowl and other miscellaneous items.

Prior to trial, defendant moved that the above items be suppressed because of the fact he possessed no control over the room searched and had no knowledge of the presence of the illegal materials found in the room, and further because the items were obtained through an illegal search and seizure. He also moved that any evidence referring to the presence of red stain on his hands be suppressed. As noted above, trial court sustained the motion insofar as it related to the red stain incident. The court overruled those portions of the motion which sought the suppression of the items seized in the search of the room. Defendant's counsel objected when the State sought to introduce the fruits of the search at trial. All such objections were overruled.

Defendant states two issues for review:

(1) Did trial court err in admitting in evidence the items seized pursuant to the

warranted search of defendant's alleged room, in that the search and resultant seizure violated defendant's rights under the Fourth Amendment to the Constitution of the United States and Article I, section 8 of the Constitution of the State of Iowa?

(2) Alternatively, if the evidence seized was properly admissible, did trial court err in failing to instruct the jury, *sua sponte*, that defendant could not have been a tenant at 121 South Main on May 29, 1974?

I. Although we understand the nature of defendant's argument concerning the first issue stated for review, it is manifestly clear that he has omitted a crucial step in the development of the issue and has asked this court to supply the absent ingredient through conjecture or speculation.

Defendant assumes the issue of admissibility at trial of the evidence seized must be resolved by reference to the question whether David Lyons' consent was effective to authorize the brief entry by Trooper Gorsuch one step into "Floyd's room" and his subsequent brief shining of the flashlight around the room (hereinafter we refer to this as the initial intrusion). Defendant, however, assumes too much. It is clear nothing whatsoever was seized during that initial intrusion. The seizure of the items was accomplished during a search conducted after a warrant had been secured.

The validity of the initial intrusion, therefore, becomes relevant to our disposition of this appeal only if, in some manner, it influenced the decision to seek a warrant or influenced the actual securing of the warrant itself. If such an influence were shown, we would be compelled to pass on the validity of the initial intrusion, since, "An unlawful search taints all evidence obtained at the search or through leads uncovered by the search. The fruit of the poisonous tree doctrine is to the effect that unlawful search taints not only evidence obtained by the search but facts discovered by process initiated by the unlawful act."

*State v. Hagen*, 258 Iowa 196, 205, 137 N.W.2d 895, 900.

Defendant's brief on appeal demonstrates his awareness of the need for some connection between the initial intrusion and the warranted search. Nonetheless, we have been provided with nothing that would allow us to infer such connection without resort to speculation. We have not been favored with the inclusion in the appendix of the affidavit presented to secure the search warrant or any of the testimony presented in the suppression hearing. Defendant's brief does not direct us to any materials not included in the appendix which would supply the missing step in his argument.

Instead, defendant asks this court to construct the missing link in his chain of reasoning. We are told in his brief that "it is very probable, if not a certainty, that Patrolman Gorsuch saw one or more of the items eventually seized" when he beamed his flashlight into the room, and that if he had not seen the items, "a search warrant would not have been desired." Similarly, we are informed "[t]he inference is inescapable that Patrolman Gorsuch saw the illegal items * * * and then obtained a search warrant to search the said room by using facts and observations acquired * * *."

On the other hand, Trooper Gorsuch's testimony at trial tends to negate an inference that the initial intrusion influenced the securing of a warrant and the subsequent search and seizure. There was no light on in the room at the time. Gorsuch testified he did not conduct a "search" during his first trip upstairs. He testified he was never more than one step inside the doorway prior to the warranted search. Although he directed a flashlight beam into the room, he testified he did so only for the sake of protection—to ascertain if anyone was in the room. According to his testimony, he saw none of the incriminating items later seized.

Defendant has not asked that we pass judgment on the validity of the search war-

rant in any other respect than that set out above, *i. e.,* the "poisoning" of the warranted search by Gorsuch's initial intrusion. Being unable to infer such fatal influence without assuming facts not before us, we are constrained to hold defendant's first issue stated for review is without merit.

■ II. In the second issue stated for review, it is urged that trial court erred in failing to instruct the jury that defendant could not have been a tenant at 121 South Main on the date of the search. We note at the outset that the record raises a serious question whether defendant waived his right to object to an omission from the court's instructions. The following exchange appears:

> "THE COURT: Opportunity is now afforded counsel for the defendant to make objections or take exceptions.

> "MR. HOADLEY (defendant's counsel): Your Honor, counsel for the defendant, having read the instructions and considered them, finds that he has no objections to the instructions as submitted."

We have held the right to attack defective instructions under Code § 787.3(5) in a motion for new trial is waived by an earlier express disclaimer of exceptions. *State v. Hillman,* Iowa, 238 N.W.2d 793 (1976); *State v. Dague,* 206 N.W.2d 93, 95 (Iowa 1973).

Even assuming arguendo that no waiver problem exists, this assignment of error is still of no benefit to defendant, for the instruction he urges is itself patently erroneous. Defendant asserts trial court was obliged to instruct the jury that, as a matter of law, he could not have been a tenant at 121 South Main on May 29–30. This conclusion is based upon a line of reasoning which embraces these three propositions:

> (1) The evidence seized could have been admissible at trial only if the search which procured it was lawful;

> (2) The only way the "first search" [Gorsuch's initial intrusion] could have

been lawful was if David Lyons' consent was valid to authorize it;

> (3) David Lyons' consent could not have validated the search if defendant had still been a tenant in the room at 121 South Main.

Therefore, the argument concludes, since trial court did not exclude from trial the seized evidence, it necessarily followed *a fortiori* that defendant could not have been a tenant at the time of the search.

This conclusion is grounded in a number of fallacious assumptions. We mention only two. In the first place, trial court's implicit factual findings pursuant to the suppression hearing were for the purpose of determining admissibility of evidence and did not conclusively preclude the trier of fact from finding defendant was a tenant. In any event, trial court's ruling on the motion to suppress did not necessarily carry an implication that David Lyons could consent to a search of the upstairs room. There is nothing before us which indicates the search warrant was invalid. Therefore, the authority, or lack thereof, of David Lyons to consent to a search of the room appears irrelevant to a decision on the admissibility of the seized evidence in light of the authority of the warrant.

Further criticism of defendant's assumptions, including their failure to allow for the possibility of joint access or control by two or more persons [see *State v. Knutson,* 234 N.W.2d 105 (Iowa 1975)] would be pointless. We hold there is no merit to defendant's allegation of error in connection with his second issue stated for review.

We note, before concluding, trial court's rather abbreviated ruling on the motion to suppress. We repeat the suggestion made in *State v. Brant,* 260 Iowa 758, 761–762, 150 N.W.2d 621, 624, that "a trial court who conducts such initial hearings where the validity of a search or the admissibility of evidence is involved might well support his ruling by findings of fact and conclusions of law * * *."

Having found no reversible error, we accordingly affirm the trial court.

Affirmed.