STATE of Iowa, Appellee,

v.

Alan Craig MOEHLIS et al., Appellants.

No. 57323.

Supreme Court of Iowa.

Feb. 16, 1977.

Wallace D. Parrish, of Schwieger & Parrish, P. C., Waterloo, for appellants.

Richard C. Turner, Atty. Gen., Richard H. Doyle IV, Asst. Atty. Gen., and David Dutton, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, UHLENHOPP, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

Defendant appeals his conviction of two counts of possession of a controlled sub-

stance with intent to deliver in violation of § 204.401(1)(a), The Code. His assignments are addressed to: (1) the adequacy of the showing to support issuance of a search warrant, (2) a claimed denial of speedy trial, (3) denial of a requested instruction regarding circumstantial evidence, and (4) the overruling of defendant's motion for a new trial. We affirm the trial court.

On January 17, 1974, pursuant to a search warrant issued by a district court judge, a search was conducted of a house at 1303 College Street, Cedar Falls, Iowa. Alan C. Moehlis (defendant) lived in that house along with other young people. Quantities of narcotic drugs were found in the house during the search. Seven individually wrapped packets of methylene dioxyamphetamine (MDA), 12 one ounce packages of marijuana, one ounce of marijuana seed, and one hundred dollars in cash, all owned by defendant, were found in the defendant's bedroom. One thousand dollars in cash and record books indicating sales of drugs were found in possession of Richard Eldridge, another resident of the house.

On January 18, 1974 defendant was charged by county attorney's information with two counts of possession of a controlled substance with intent to deliver in violation of § 204.401(1)(a), The Code. The same information charged Eldridge with two counts of possession with intent to deliver. The information also charged Randy Lowenberg with one count of possession and Meridee Arthur (Arthur) with one count of possession.

On February 12, 1974 Eldridge filed a motion to suppress all evidence obtained in the search. The motion was overruled. On March 1, 1974 Arthur filed a motion for a bill of particulars. That motion was sustained. On March 15, 1974 defendant filed a motion to strike the county attorney's additional minutes of testimony. That motion was overruled. On March 18, 1974 Arthur and defendant filed motions to dismiss on grounds the State failed to comply with the court's order granting the bill of particulars and consequently trial could not proceed on March 18 as previously sched-uled. Those motions were both overruled and defendant's trial date was continued until March 25, 1974. Defendant's trial commenced on that day.

At the close of evidence defendant renewed the motion to suppress. The motion was overruled. Defendant requested the jury be instructed as to circumstantial evidence. The requested instruction was refused. Defendant was found guilty on both counts and appeals.

I. Defendant first claims the search warrant was issued on the basis of insufficiently detailed underlying facts and circumstances.

The information for search warrant was signed by Michael Quinn, detective sergeant with the Waterloo police force. The information asserted MDA paraphernalia was being kept on the premises for MDA manufacture, use, and distribution. The information asserted records indicating sales of MDA as well as monies derived from sales of MDA were on the premises. The information sought a search of the premises and all persons thereon at the time of execution. The facts upon which Sgt. Quinn based his assertions were as follows:

"1. That on January 17, 1973, Sgt. Quinn was contacted by a confidential informant regarding a house located at 1303 College Street, Cedar Falls.

"2. That the above informant is known to Sgt. Quinn and has been for the past four (4) years. That the above informant has given information to Sgt. Quinn on at least five (5) different occasions.

"3. That the information given has always proven to be reliable and truthful and has led to a number [of] arrests. That Sgt. Quinn has substantiated information received from this informant.

"4. That the informant had been at the house at 1303 College in the past (24) hours. That the informant seen a white powder substance purported to be MDA (methylene dioxyamphetamine). That the informant has used MDA in the past and did use a small amount while at the house at 1303

College. That the reaction received in both cases was the same.

"5. That the occupants of the house are Richard Eldridge and Alan Moehlis.

"6. That during the week of January 13th, the informant was present at the house at 1303 College when one (1) gram of MDA was sold. That the price for one (1) gram, wrapped in aluminum foil, was $45.00

"7. That on March 15, 1973, Sgt. Hermansen, a member of the Waterloo Narcotic Division was contacted by a reliable informant. That the informant is known to Hermansen and has proven reliable on at least two (2) occasions.

"8. That the informant told Sgt. Hermansen that Richard Eldridge was involved in drug traffic in Cedar Falls, Iowa. That Richard Eldridge was a close associate of Richard Rowell. That Eldridge was currently in the business of selling drugs with Richard Rowell.

"9. That Richard Rowell has been arrested on Sale of Narcotic charges in the past by Waterloo Police. That the charges were dismissed on the grounds that Rowell entered the service.

"10. That Sgt. Quinn has surveilled the house at 1303 College and observed a white Ford Van registered to Alan Moehlis on many occasions. That Sgt. Quinn has also observed a 1968 Chev. registered to Richard Eldridge at the house on several occasions.

"11. That a check with Cedar Falls Utilities found that the utilities at 1303 College were in the name of Richard Eldridge."

Governing principles are well settled: " * * * Probable cause exists when the facts and circumstances presented to [a] judicial officer are sufficient in themselves to justify the belief of a person of reasonable caution that an offense has been or is being committed." *State v. Easter*, 241 N.W.2d 885, 886–887 (Iowa 1976); *State v. Boer*, 224 N.W.2d 217, 219 (Iowa 1974); *State v. Everett*, 214 N.W.2d 214, 217 (Iowa 1974). "The issuing officer cannot rely on mere conclusions to determine that probable cause exists." *Easter*, supra, at 887. The foregoing cases are our applications of

the principles laid down in *Aquilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). We discussed the *Aquilar* test and the alternative test laid down in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) in *Easter*, supra, at page 887. There we described the two *Aguilar* requirements as follows: " * * * [W]hen an informant's tip forms the basis for a search warrant, the magistrate must be advised of some of the underlying circumstances from which informant reached his conclusions and some of the underlying circumstances from which the officer concluded his informant was reliable. 378 U.S. at 114–115, 84 S.Ct. at 1514, 12 L.Ed.2d at 729."

We believe the facts asserted by Sgt. Quinn in the search warrant information sufficiently revealed the underlying circumstances for his conclusions. The facts listed in points 4, 5, 6, 10 and 11 are sufficient to satisfy the first *Aguilar* requirement. We believe the facts asserted by Sgt. Quinn were also sufficient to reveal how he concluded his informant was reliable. The facts listed in points 1, 2, and 3 are sufficient to satisfy the second *Aquilar* requirement. It should also be noted the statements made by Sgt. Quinn's informant gain credibility since they were against the informant's penal interest. See *Everett*, supra, 214 N.W.2d at 217; *U. S. v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723, 734 (1971). Because the information is sufficient under *Aquilar* there is no need to consider the *Spinelli* test.

Defendant challenges the sufficiency of the showing of the underlying circumstances, claiming they did not show occupants of the house were involved in the sale of contraband and also pointing out there was no assertion any of the informant's prior tips ever led to convictions. These claims fail because neither are requisites for a finding of probable cause. The rules set out in *Aguilar* and *Spinelli* were designed to enable the issuing judicial officer to know he is relying on something more substantial than a casual rumor circu-

lating in the underworld or an accusation based merely on an individual's general reputation. *Easter,* supra, 241 N.W.2d at 887; *Spinelli,* supra. The requirements of *Aguilar* and *Spinelli* were met in the instant case. See also *State v. Valde,* 225 N.W.2d 313, 315–316 (Iowa 1975); *State v. Hamilton,* 236 N.W.2d 325, 327–328 (Iowa 1975); 28 C.J.S. Drugs and Narcotics, Supp. § 134, pp. 199–201; 68 Am.Jur.2d, Searches and Seizures, § 65, pp. 717–720; Annot., 10 A.L.R.3d 359, 364.

Defendant's first assignment is without merit.

II. Defendant's second assignment is addressed to the trial court's refusal to dismiss the case because the State failed to provide him with a speedy trial. Section 795.2, The Code, provides: "If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial within sixty days after the indictment is found, the court must order it to be dismissed, unless good cause to the contrary be shown. * * *."

Defendant was informed against January 18, 1974 and his trial began March 25, 1974. A period of 66 days intervened. The obvious question is whether good cause has been shown for the six day delay. We have considered claims of good cause in a number of cases including *State v. Albertsen,* 228 N.W.2d 94, 97 (Iowa 1975) where we said:

"In *State v. Gorham,* 206 N.W.2d 908 (Iowa 1973) we held that the applicability of the good cause exception under Code § 795.2 was to be determined by a balancing process. The burden is on the State to show good cause. Relevant factors include those delineated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). (Authority.) * * *."

■ Length of delay, reason for the delay, a defendant's assertion of his right to speedy trial, and prejudice to the defendant from the delay are among the factors affecting the quantum of proof necessary to show good cause under the statute.

" * * * [A]s noted in *State v. Shockey,* 214 N.W.2d [146] at 150 [Iowa 1974] the statute goes further in implementing a defendant's speedy trial right than the state and federal constitutions require. Application of the statute is a matter of carrying out a legislative mandate which falls well within the constitutional speedy trial standard." *Albertsen,* supra, 228 N.W.2d at 97.

■ Delay attributable to the defendant may constitute good cause; a defendant must accept such passage of time as is reasonably necessary for action upon his own motions and applications. *State v. Donnell,* 239 N.W.2d 575, 579 (Iowa 1976); *State v. Collins,* 236 N.W.2d 376, 377–378 (Iowa 1975); *State v. Truax,* 232 N.W.2d 861, 863 (Iowa 1975).

In ruling on defendant's motion the trial court carefully reviewed the many motions filed by the various defendants to the joint county attorney's information. A number of these motions were previously mentioned. To detail all motions filed by all defendants would unduly extend this opinion. Each of the four defendants filed one or more motions. The trial court believed the many defense motions were the major reason for the delay and were sufficient to show good cause.

■ Joint proceedings in drug cases are authorized by § 204.408, The Code. Consideration of the motions made by the various defendants inured to their collective benefit. None of the defendants objected to joint proceedings on grounds the motions were consuming too much time. We believe defendant must accept the reasonable delay caused by the motions filed by all defendants, himself included. It is not necessary that the delay be exclusively attributable to a defendant. See *State v. LaMar,* 224 N.W.2d 252, 254 (Iowa 1974); *State v. Thomas,* 222 N.W.2d 488, 491–492 (Iowa 1974); *State v. Jennings,* 195 N.W.2d 351, 356 (Iowa 1972); *Albertsen,* supra, 228 N.W.2d at 97. Good cause was shown.

Defendant's second assignment is without merit.

III. The trial court refused defendant's request to include the standard jury instruction pertaining to circumstantial evidence. Defendant does not dispute there was direct evidence on all elements of the offense except intent. However defendant claims the requisite intent to deliver had to be inferred entirely from circumstantial evidence. He argues the jury should have been instructed the evidence as to his intent, being only circumstantial, had to be entirely consistent with his guilt and entirely inconsistent with any rational theory of his innocence.

■ It is well settled there is no reversible error in failing to instruct as to circumstantial evidence where the evidence is not wholly circumstantial. That is, where there is sufficient direct evidence to convict, the circumstantial evidence instruction need not be given even though the prosecution relies in part on circumstantial evidence. *State v. Ochoa,* 244 N.W.2d 773, 777 (Iowa 1976); *State v. Speck,* 242 N.W.2d 287, 295 (Iowa 1976); *State v. Peterson,* 196 N.W.2d 436, 438–439 (Iowa 1972); *State v. Post,* 255 Iowa 573, 584, 123 N.W.2d 11, 18 (1963); 23A C.J.S. Criminal Law § 1250, pp. 610–621; 75 Am.Jur.2d Trial, §§ 843–853, pp. 731–738. Under the foregoing authorities it is not entirely clear whether there must be direct evidence of each essential element before the circumstantial evidence instruction can properly be denied.

■ We believe evidence of defendant's intention to deliver was entirely circumstantial. It was based on: (1) the quantity of narcotics distributed to defendant, (2) other quantities of marijuana found in the house, (3) the drug paraphernalia found in the house, (4) the opinion testimony of Police Officers Quinn and Dolan (that those items were not being held for personal use and that the records were being kept for sales and purchases of drugs). Without indicating what our view would be with regard to any other element we note the authorities generally agree the circumstantial evidence instruction is not required where there is only circumstantial evidence of the element of intent. *State v. Lapoint,*

87 Vt. 115, 88 A. 523; 23A C.J.S. Criminal Law § 1250, p. 620; 75 Am.Jur.2d, Trial, § 845, p. 733. See also 4 Wharton's Criminal Procedure, Charge to Jury, § 540, p. 16.

Defendant's third assignment is without merit.

IV. Defendant's final assignment is directed to the denial of his motion for new trial. The motion was based on the claim there was no direct evidence of intent to deliver and the jury was not instructed on the law pertaining to circumstantial evidence. This is the same argument rejected in division III of this opinion. For the reasons there explained we find it without merit.

As all defendant's contentions considered individually and collectively are without merit the judgment of the trial court is

AFFIRMED.

MOORE, C. J., and UHLENHOPP and McCORMICK, JJ., concur.

MASON, J., dissents.