**STATE of Iowa, Appellee,**

v.

**Dennis Robert Joseph EGE, Appellant.**

No. 61545.

Supreme Court of Iowa.

Jan. 24, 1979.

Rehearing Denied March 15, 1979.

Dennis W. Parmenter, of Traeger & Koempel, West Union, for appellant.

Richard C. Turner, Atty. Gen., Ann Fitzgibbons, Asst. Atty. Gen., Walter L. Saur, Fayette County Atty., and Jay A. Nardini, Asst. County Atty., for appellee.

ALLBEE, Justice.

Defendant, Dennis Robert Joseph Ege, appeals his conviction for rape, a violation of § 698.1, The Code 1977. The crime which engendered this prosecution occurred in the early morning of July 31, 1977 in a county park near Oelwein. We shall treat further facts as they become relevant to the particular issues which have been raised.

I. It is first contended that trial court, acting through Judge L. D. Lybbert, erred in failing to suppress a b.b. pistol and certain clothing which defendant was wearing on the night of the crime. Defendant insists that the seizure of those items without benefit of a warrant was unreasonable and a violation of both the federal and state constitutions. Our review of such questions is de novo. *State v. Iowa District Court In and For Johnson County,* 247 N.W.2d 241, 245 (Iowa 1977); *State v. Knutson,* 234 N.W.2d 105, 106 (Iowa 1976). We call the attention of the trial bench to the need for findings of fact and conclusions of law in support of trial court rulings on motions to suppress. Such would be more helpful than the summary overruling of defendant's motion found in this record. *See State v. Peck,* 238 N.W.2d 785, 789 (Iowa 1976).

Testimony by defendant and his wife indicated that he had returned home in an extremely intoxicated condition at about 3:30 in the morning of July 31. He slept until 9:00. When he awoke and joined his family his face was red and flushed and he was "kind of incoherent." A discussion of defendant's drinking problem occurred that morning, during which he became quite emotional. After eating a sandwich for lunch, defendant returned to bed. He finally went to sleep and had been asleep for "a couple of hours" when Agent Ronald G. Makin, of the Bureau of Criminal Investigation, arrived at the Ege home. At the agent's request, defendant's wife awakened defendant. She did so only with some difficulty. She testified that defendant "didn't look good."

Agent Makin and the deputy sheriff accompanying him took defendant out to the deputy's car. Defendant was given the *Miranda* warnings and signed a waiver at 5:04 p. m. The peace officers testified that defendant was not drunk, that he seemed to be thinking logically and appeared to be normal. The deputy also said that Ege's appearance was the same as at other times when they had seen each other. Pursuant to a request by the BCI agent, defendant went back into the house, found the b.b. pistol and relinquished it to Makin. Defendant, again at Makin's request, also obtained the clothing he had been wearing on the previous evening and turned that over to the officers.

Defendant's version of the events in the deputy's car is that he was coerced into turning over the gun and clothing. He

claimed to not know that he could refuse the officers' requests and that he was told that the evidence could be obtained through use of a warrant. The peace officers denied making any promises or threats and indicated that defendant's actions were voluntary responses to the officers' requests.

The legal principles involved are relatively simple. A seizure without search is subject to fourth amendment scrutiny. *State v. Kramer,* 231 N.W.2d 874 (Iowa 1975). Searches and seizures conducted without a warrant are per se unreasonable unless they fit within one of several well defined exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *State v. King,* 191 N.W.2d 650, 654 (Iowa 1971). Therefore, absent a warrant, the burden is on the State to demonstrate that the officers' actions were lawful.[1] *State v. Iowa District Court In and For Johnson County,* 247 N.W.2d 241, 246 (Iowa 1977) (dicta). *See also Whiteley v. Warden of Wyoming State Penitentiary,* 401 U.S. 560, 566, 91 S.Ct. 1031, 1036, 28 L.Ed.2d 306, 312 (1971). Consent is one such exception. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–4, 36 L.Ed.2d 854, 858 (1973); *State v. Ahern,* 227 N.W.2d 164, 165 (Iowa 1975). The consent must be freely and voluntarily given and not a mere submission to authority. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Contrary to defendant's contentions, however, knowledge of the right to refuse consent is only one factor to be considered in answering the question of voluntariness. *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047–8, 36 L.Ed.2d at 862–3. Nor does the fact that Ege claimed to be in an impaired physical condition control. *Cf. State v. Russell,* 261 N.W.2d 490, 493–5 (Iowa 1978) (*Miranda* waiver obtained from defendant suffering with burns); *State v. Hahn,* 259 N.W.2d 753, 757–8 (Iowa 1977) (*Miranda* waiver obtained from individual

of subnormal intelligence); *State v. Youngbear,* 229 N.W.2d 728, 736 (Iowa 1975) (proof of intoxication goes to weight accorded incriminating statements rather than their admissibility).

In examining all the surrounding circumstances, we find that the peace officers neither exerted a claim of authority upon Ege nor subjected him to subtly coercive questioning. Through the *Miranda* warnings and the waiver which he signed, Ege was informed of his basic rights to maintain silence and to obtain counsel. He was capable of understanding the position in which he had been placed and the alternatives which were available to him. He responded willingly to Agent Makin's straightforward requests for the b.b. pistol and his clothing. Trial court was correct in refusing to suppress that evidence.

II. Defendant's second contention is that he was denied his speedy trial right under § 795.2, The Code 1977. A recitation of the sequence of events preceding trial is necessary.

A preliminary information was filed August 1, 1977. By an order entered August 2, defendant was placed in the custody of the Mental Health Institute at Independence, due to his alcoholism and for mental evaluation. He was then charged by county attorney's information on August 22. Applications were made by the defense for his mental examination and evaluation and his hospitalization for those purposes. Orders pursuant to these applications were entered on August 29 and September 1. By order of September 7, trial was set for October 18. The motion to suppress which raised the issue considered in division I was filed on October 7 and overruled on October 11.

On October 14, a Friday, defense counsel filed a notice of intent to use an insanity defense as required by § 777.18, The Code

---

1. Defendant contends that the State should meet a clear and convincing standard of proof. We do not decide the issue, however, because the State has acquiesced in defendant's contention, because that was the standard used by trial court, and because we find that the totality of the circumstances indicate clearly and convincingly that the seizures here were done with defendant's consent.

1977.[2] The proof of service attached to the notice stated that it had been mailed to the prosecutor on October 13.

On October 17, the county attorney moved for a continuance of four days, arguing that defendant's notice was untimely and that the prosecution required a psychiatric evaluation of defendant to meet its burden of proof. Defense counsel resisted the motion because granting the continuance would place the trial beyond the 60 day speedy trial period imposed by § 795.2.

Trial court, again acting through Judge Lybbert, found that good cause existed for continuing the trial beyond the speedy trial period because defendant had failed to file his notice until the prior Friday. It therefore set the trial for the next court day in Fayette County, October 25, 1977.

On October 19 the prosecutor moved for a second continuance. In support he submitted a letter from Paul L. Loeffelholz, M.D., of the Security Medical Facility at Oakdale, in which the doctor stated that a minimum of 30 days was required for a meaningful evaluation. The prosecutor also offered a professional statement in which he said that his office received the notice of the insanity defense on the morning of the 17th and that, due to administrative errands, he had not seen the notice until the afternoon of that day. He also stated that in examining reports of prior evaluations of defendant no insanity defense had been raised "that [he] viewed with alarm."

Defendant requested that his notice be withdrawn and that the case proceed to trial on the 25th. Trial court granted the continuance because the issue might be raised at trial and might require "recessing the trial for an extended period of time, in order that the State could then go ahead and complete the examination. . . ." The court found good cause for the delay because the defendant filed his notice only a short time before trial, and due to other matters which prompted the court "on its own motion [to] cause inquiry to be made as to the defendant's competency to stand trial. . . ." Trial was reset for November 15.

On October 26, after the 60 day period had expired, defendant filed a motion to dismiss the prosecution for failure to grant a speedy trial. The district court, Joseph C. Keefe, Judge, recited the reasons given by Judge Lybbert for the continuances, registered his agreement that those reasons constituted good cause and denied the motion. Trial was commenced on November 15.

■ The principles governing the disposition of this appeal were recently set out in *State v. Lybarger,* 263 N.W.2d 545, 546–7 (Iowa 1978), and *State v. Moehlis,* 250 N.W.2d 42, 46 (Iowa 1977). The State bears the burden of bringing defendant to trial in a timely fashion. Delay beyond the 60 day period may be excused by defendant's waiver of the right, by a delay attributable to defendant, or by a showing of other good cause for the delay.

■ The delay in this case cannot be justified on the sole basis that continuances were granted. Instead, the reasons for the continuances must be examined, to determine whether those reasons constitute good cause. *State v. Hines,* 225 N.W.2d 156, 160–1 (Iowa 1975). On review, trial court's fact finding, that the continuances were necessary to allow the State to properly prepare to meet its burden on the sanity issue, is binding upon us. *State v. LaPlant,* 244 N.W.2d 240, 242 (Iowa 1976). Defendant must, in order to obtain a reversal, show that the court abused its limited discretion. *Id.*

2. **777.18 Insanity or alibi defense—notice— continuance.** Where the defendant pleads not guilty and proposes to show insanity as a defense, or that he relies on an alibi or that he was at some other place at the time of the alleged commission of the offense charged, he shall, at the time he pleads or at any time thereafter, not later than four days before trial, file a written notice of this purpose, setting forth the names of the witnesses, together with the address and occupation of each, and a statement of the substance of that which the defendant expects to prove by the testimony of each of said witnesses. If the defendant files said notice less than four days before the case is set for trial, the state, on motion of the county attorney, shall be entitled to a continuance of said cause for not to exceed four days.

The State seeks to justify the delay as being attributable to defendant. Its argument is a narrow one, asserting only that the notice of insanity defense was the sole cause of the delay. The absence of any extraordinary or unnecessary actions by defendant prior to trial and the fact that prior to the filing of the notice both parties were prepared to go to trial on the scheduled date indicates that the State's argument is the most that this record would support. Defendant, for his part, makes no independent claim that § 777.18, *supra* footnote 2, was violated, choosing instead to argue that point solely as an adjunct to the speedy trial claim. This may be due, in part, to the fact that no attempt was made to preserve any § 777.18 issue at the trial level.

The findings by both trial judges that good cause was shown for the delay were correct. The postponement was attributable to defendant. Such delay constitutes good cause. *State v. Truax,* 232 N.W.2d 861, 863 (Iowa 1975). There was no finding of fault on the part of defendant or his counsel for filing the insanity notice on the last day permitted by statute. But no finding of fault is required. *LaPlant,* 244 N.W.2d at 242. The State was entitled to such delay as was reasonably required to prepare to meet its burden on the insanity defense. There was no extension of time beyond that so required. Good cause existed for the entire delay beyond the 60 day statutory period.

III. Defendant next insists that trial court erred in refusing to allow impeachment of a prosecution witness by a showing that she had been previously convicted of a felony. During the prosecution's case in chief a woman testified that she had seen defendant at a bar in Oelwein on the night of the rape. She testified that he approached the man who was escorting her and offered to pay the woman and her companion $100 each if the woman would go with defendant.

On cross-examination, defense counsel asked the witness if she had ever been convicted of a felony. The prosecutor objected. In proceedings out of the jury's presence it was established that the witness had been found guilty of forgery, was given a deferred sentence on March 28, 1975 and had successfully completed the period of probation set by the court. The issue presented was whether, in such circumstances, the witness had been convicted of a felony within the meaning of § 622.17, The Code 1977.[3]

Section 622.17 was dealt with in *State v. Martin,* 217 N.W.2d 536 (Iowa 1974), where the court established standards for the admission of prior convictions. The meaning of the word "conviction," or whether a judgment entry is required, was not discussed, however.

Trial court relied upon *State v. Farmer,* 234 N.W.2d 89, 92 (Iowa 1975), to hold that when the conditions of a deferred judgment have been completed there is no "conviction" within the meaning of § 622.17. It therefore ordered the witness to answer the question in the negative.

The word "conviction" may have different meanings within different contexts. *State v. Hanna,* 179 N.W.2d 503, 507–8 (Iowa 1970). Because reasonable minds might disagree as to its meaning in a particular application, it is appropriate for this court to employ methods of statutory construction to determine what is meant by the word when used in § 622.17. *See Hartman v. Merged Area VI Community College,* 270 N.W.2d 822, 825 (Iowa 1978). It is often said that when this court has interpreted a statute in a particular way and the legislature has thereafter left it unchanged, it is presumed that the legislature has acquiesced in that interpretation. *State v. Dunham,* 232 N.W.2d 475, 476 (Iowa 1975).

In *Hackett & Freeman v. Graves,* 103 Iowa 296, 298–300, 72 N.W. 528, 529 (1897), the court was presented with the question of whether a witness could be impeached by showing his conviction for a felony when an appeal of that conviction was pending. In

---

3. **622.17 Previous conviction.** A witness may be interrogated as to his previous conviction for a felony. No other proof is competent, except the record thereof.

the process of dealing with that issue the court held, albeit gratuitously, that "conviction" within § 3648, The Code 1873 (now § 622.17) "includes both the ascertaining of the guilt of the accused and judgment thereon by the court." *Id.* at 299–300, 72 N.W. at 529. Considering the long ascendency of that pronouncement without legislative dissent, it is fair to presume that the court there accurately discerned the legislature's intent.

It is true, as defendant stresses, that other courts have reached contrary conclusions. *See, e. g., United States v. Turner,* 497 F.2d 406 (10th Cir. 1974); *State v. Reyes,* 99 Ariz. 257, 264, n. 1, 408 P.2d 400, 405 (1965). These decisions, however, are not persuasive when construing the Iowa statute involved here. Defendant's argument is without merit.

IV. In the fourth division of his brief defendant claims that he was denied an opportunity to confront one of the witnesses against him, Dr. Romulo Lara, the State's psychiatric expert. Dr. Lara had examined Ege while he was held at the Security Medical Facility at Oakdale immediately prior to trial. Defendant's complaint was that the doctor had in part based his opinions on Ege's mental condition on experience with Ege when he had been at Oakdale five years earlier on a felony conviction. Thus, according to defendant, any cross-examination which exposed the possibly stale nature of the basis for Dr. Lara's opinion would reveal to the jury that defendant had been convicted of a crime on an earlier occasion. It was to avoid such exposure of his prior record that defendant had not testified in his own behalf.

■ The right of confrontation, of course, includes the right to effective cross-examination. *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965). *See also Smith v. Illinois,* 390 U.S. 129, 131–2, 88 S.Ct. 748, 750, 19 L.Ed.2d 956, 959 (1968); *Alford v. United States,* 282 U.S. 687, 692–4, 51 S.Ct. 218, 219–20, 75 L.Ed. 624, 627–9 (1930). Lapse of memory or assertion of privilege by the witness can have the effect of denying confrontation. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

■ In determining whether Ege was denied the opportunity to confront Dr. Lara, we take guidance from *United States v. Rogers,* 549 F.2d 490 (8th Cir. 1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977). *Rogers* is factually different, in that it involved the use of a statement by a confederate who asserted his privilege against self incrimination when questioned at trial. But the court, in determining whether confrontation had been denied, considered numerous authorities and reached the conclusion that the "relevant factual inquiry is whether, under the circumstances," the jury has been deprived of a satisfactory basis for evaluating the truthfulness of the prosecution witness's testimony. 549 F.2d at 499. *See also United States v. Scholle,* 553 F.2d 1109, 1119–20 (8th Cir. 1976).

■ In the case at hand, assuming that we accept defendant's rather speculative claim which makes Dr. Lara partially unavailable for cross-examination, there has been no detriment imposed upon the factfinding process by that unavailability. Considerable effort was taken to ensure that the witness would not mention defendant's previous conviction. The jury had a sufficient basis for evaluating Dr. Lara's testimony. No violation of the confrontation clause occurred.

■ V. The fifth issue which defendant brings to our attention involves the cross-examination of the defense's psychiatric expert, Dr. Phillip Hastings. On direct examination, defense counsel elicited the doctor's opinion that Ege could not have formed a specific intent to commit rape while in the intoxicated state he was in on the night of the crime. On cross-examination the prosecutor pointed out a statement in the doctor's report which indicated that defendant had a potential for committing violent acts toward women, particularly if he had been drinking. Defense counsel objected that the prosecutor's questioning on this point exceeded the scope of direct examination.

The scope of cross-examination is a matter which lies within the sound discretion of trial court. *State v. Jackson*, 259 N.W.2d 796, 800–1 (Iowa 1977). The standard for judging what is within the scope of direct, at least when a criminal defendant is the subject of cross-examination, is set out in *State v. Jensen*, 189 N.W.2d 919, 922–4 (Iowa 1971). The questioning here met that standard. We find no abuse of trial court's discretion on this point.

VI. Finally, defendant points to several examples of prosecutorial activity which he characterizes as misconduct. However, an adequate record has not been provided for our review of those instances which we regard as potentially troublesome. *See State v. Swallom*, 244 N.W.2d 321, 324 (Iowa 1976); *State v. LaMar*, 260 Iowa 957, 966–7, 151 N.W.2d 496, 501–2 (1967).

Finding no error, we affirm.

AFFIRMED.

All Justices concur except HARRIS, LeGRAND and LARSON, JJ., who dissent.

HARRIS, Justice (dissenting).

I respectfully dissent from division III and the result. I think the majority should interpret the word "conviction," under § 622.17, The Code, in the light of the statute's assumption.

The statute presupposes that a jury is entitled to know of a witness's prior felony, as defined in *State v. Martin*, 217 N.W.2d 536 (Iowa 1974), in evaluating the veracity of the witness. The majority's definition of "conviction," while technically accurate for other purposes, does not seem appropriate for the purposes of this section. Whether another trial court did or did not give the witness a deferred sentence for his crime has nothing to do with the witness's honesty.

I would adhere to the authorities from other jurisdictions cited in the majority opinion. I would hold the trial court erred in limiting defendant's cross-examination of the witness.

LeGRAND and LARSON, JJ., join in this dissent.