The STATE of Iowa, Appellee,

v.

Larry DeWayne KELLY, Appellant.

No. 62100.

Supreme Court of Iowa.

Oct. 17, 1979.

Larry J. O'Connor, Waterloo, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., and Robert E. Mahan, Asst. County Atty., for appellee.

Considered by REES, P. J., and HARRIS, McCORMICK, ALLBEE, and McGIVERIN, JJ.

HARRIS, Justice.

Defendant appeals from his conviction of first-degree robbery in violation of section 711.2, The Code 1979. His sole assignment of error is the refusal of the trial court to suppress evidence seized during a warrantless search. We affirm the trial court.

In determining whether the evidence was unconstitutionally seized our review is de novo. *State v. Ege*, 274 N.W.2d 350, 352 (Iowa 1979). On the evening of January 30, 1978, two Waterloo, Iowa police officers, Sgts. Witt and Lattin, responded to a call that a store had been robbed. Two or three inches of what they described as "nice, fresh, new snow" covered the ground and Sgt. Witt soon found tracks leading away from the scene of the robbery. Immediately next to the tracks he found a pair of sunglasses similar to those said to have been worn by the robber.

The police officers followed the tracks to a dwelling in which the defendant lived with his mother and sisters. The tracks circled the house and ended at the back door. When the officers returned to the front of the house the defendant's mother, who owns the property, appeared at the front door to ask why they were there. The officers told her of the robbery and the presence of the tracks. They asked to come in to discuss the matter and she agreed.

Mrs. Kelly told the officers she doubted that anyone could have entered her house without being detected. Nevertheless, at the officers' suggestion, she readily gave permission for them to check the basement. After freely consenting to the search of the basement Mrs. Kelly accompanied the officers there. Sgt. Witt spied, in plain view, a pair of wet leather shoes on the floor with water standing around them. Upon examining the shoes, their size, and sole pattern, the officer believed the same shoes had made the tracks they had followed. Mrs. Kelly told the officers the shoes belonged to her son, the defendant. She freely consented to the seizure of the shoes as evidence.

Near the shoes were $24.55 in coins which the officers also seized. About $26 in change had been taken in the robbery. The evidence is conflicting on where the coins were in the Kelly basement. Upon our de novo review we find the coins were found as Sgt. Witt explained in cross-examination: "The money was, it looked very out of place scattered on the floor half covered by a shirt." Mrs. Kelly made no objection when the officers seized the coins and gave a receipt.

The defendant himself then entered the basement and vehemently criticized his mother for the officers' presence there. At length she fainted. Because Mrs. Kelly became incapable of granting permission for further search it was abandoned.

I. We reviewed the principles of warrantless searches in *Ege*, 274 N.W.2d at 353:

Searches and seizures conducted without a warrant are per se unreasonable unless they fit within one of several well defined exceptions. [Authorities.] Therefore, absent a warrant, the burden is on the State to demonstrate that the officers' actions were lawful. [Authorities.] Consent is one such exception. [Authorities.] The consent must be freely and voluntarily given and not a mere submission to authority. [Authority.] Contrary to defendant's contentions, however, knowledge of the right to refuse consent is only one factor to be considered in answering the question of voluntariness. [Authority.] Nor does the fact that Ege claimed to be in an impaired physical condition control.

In *State v. Knutson*, 234 N.W.2d 105, 107 (Iowa 1975), we said:

When the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof consent was given by the defendant, but may show permission to search was obtained from a person who possessed common authority over or other sufficient relationship to the premises. Common authority stems from mutual use of the property by persons generally having joint access or control for most purposes. From such relationship, it is reasonable to recognize that any of the co-inhabitants has the right to permit a search in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249–50 (1974).

Under this principle "[a] parent may generally consent to the search of a son's or daughter's room in a house owned and occupied by the parent." 68 Am.Jur.2d, Searches and Seizures, § 50.

Under these authorities we hold Mrs. Kelly had ample authority to consent to the search by the officers and on this record we find that she did so.

■■■ II. The defendant argues that Mrs. Kelly's consent extended only to the search of her basement for the robber. The State concedes that officers searching by consent are limited to the terms of the consent. But we do not find that Mrs. Kelly limited her consent in the manner defendant argues. Mrs. Kelly expressly consented to the officers' entry into her basement for the purpose of looking for a robber and later she consented to their seizure of the shoes which were in plain view.

We have also found that at least some of the coins were also in plain view. The plain view doctrine is explained in 68 Am.Jur.2d, Searches and Seizures, § 88 and its application to a consent search is explained in 79 C.J.S. Searches and Seizures § 62, p. 818 as follows:

The limits of the right of the officers to search is only coextensive with particular search consented to; thus a consent to a search of a portion of a structure gives no right to search the whole structure, nor will a consent to search a house for a man permit a search of it for an illicit still; nevertheless, if officers are allowed upon accused's premises by his consent, and, while thereon, observe a felony being committed in their presence, a search of his premises is authorized. *Likewise it has been held that where officers are invited into accused's room, and while therein observe without a search a roll of money which the prosecuting witness claimed was part of amount stolen, such act of the officers does not constitute an invasion of accused's constitutional immunity.* [Emphasis added.]

Because Mrs. Kelly consented to the entry of her basement and the seizure of the shoes, and because some of the coins were in plain view, we do not believe the officers, under the circumstances of this case, acted unlawfully when they removed the clothing from the remainder of the coins and seized them. It was, as the officer said, unusual for the coins to be scattered on a basement floor. It is no extension of the plain view doctrine to allow the officers to move the shirt away from the part of the coins it covered. *See United States v. Wilson*, 524 F.2d 595, 598–99 (8th Cir. 1975), *cert. denied*

424 U.S. 945, 96 S.Ct. 1415, 47 L.Ed.2d 351 (1976); *United States v. Hickman*, 523 F.2d 323, 328 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 778, 46 L.Ed.2d 639 (1976).

In summary we hold there was consent for the search of the basement and seizure of the shoes. And we hold the coins were properly seized under the plain view doctrine. The trial court did not err in refusing to suppress the items seized. As this is defendant's sole assignment of error the judgment against him is affirmed.

AFFIRMED.

All Justices concur, except McCORMICK, J., who dissents.

McCORMICK, Justice (dissenting).

From a de novo review of the record of the suppression hearing, I am unable to agree with the majority's finding that the coins seized by the officers were in plain view. Officer Marc Lattin testified as follows:

    Q. You mentioned that you found the change in the bottom of a suitcase, is that right? A. Yes.

    Q. Was it covered with clothing? A. Yes, it was.

    Q. How did you know the change was there? A. I moved the clothing back.

    Q. You moved the clothing back? A. Yes.

    Q. So it wasn't in plain view? A. No, it was not.

His version was confirmed by witness Ernie Bradford, a neighbor who was present during the search. I find this evidence more persuasive than the cross-examination remark of Officer Witt, which is relied on by the majority.

I would hold that the trial court erred in overruling the motion to suppress the coins and, on that basis, reverse and remand the case for new trial.